**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-1828**

———————

DAVID KARL DANSER,

                    Plaintiff - Appellee,

          v.

WARDEN PATRICIA R. STANSBERRY; LIEUTENANT BOBBY ROY; OFFICER
THERON BOYD,

                    Defendants – Appellants,

          and

LIEUTENANT DODSON; OFFICER DIAZ,

                    Defendants.

———————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Terrence W. Boyle,
District Judge. (5:08-ct-03116-BO)

———————

Argued:  May 13, 2014              Decided:  July 3, 2014

———————

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

———————

Vacated and remanded with instructions by unpublished opinion.
Judge Keenan wrote the opinion, in which Judge Wilkinson and
Judge Diaz joined.

———————

**ARGUED**: Michael Gordon James, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellants.   Elizabeth
Guild Simpson, NORTH CAROLINA PRISONER LEGAL SERVICES, INC.,

Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, R.A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in holding that certain prison officials were not entitled to qualified immunity for injuries inflicted by an inmate on David K. Danser, a federal prisoner serving a sentence for convictions involving the sexual abuse of a minor. The incident occurred after prison officials left an enclosed recreation space unsupervised for several minutes, during which period Danser was attacked by an inmate who was a member of a violent prison gang. Danser filed a complaint against the prison officials under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (Bivens), alleging that the officials' actions showed a deliberate indifference to his safety, thereby violating his constitutional rights. The prison officials filed a motion for summary judgment asserting qualified immunity, which the district court denied.

On appeal from the district court's summary judgment determination, the prison officials argue that they did not violate Danser's constitutional rights because the record lacks any evidence that they had the "culpable state of mind" necessary to establish a deliberate indifference claim. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). In response, Danser argues that we lack jurisdiction over this appeal and, alternatively, maintains that the district court correctly

3

concluded that the defendants were not entitled to qualified immunity at the summary judgment stage of the proceedings.

Upon our review, we conclude that we have jurisdiction to decide this issue of law, and that the district court erred in denying the prison officials' motion for summary judgment asserting qualified immunity. Accordingly, we vacate the district court's order and remand the matter with instructions that the court enter judgment in favor of the prison officials.

I.

Danser is a federal inmate serving a 370-month sentence for convictions of sexual exploitation of children in violation of 18 U.S.C. § 2251(a), sexual abuse of a minor in violation of 18 U.S.C. § 2243(a), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). At the time of the incident at issue in this civil action, Danser was housed in the "low" security facility at the Federal Correctional Institution in Butner, North Carolina (FCI-Butner).

On August 21, 2005, Danser was assigned to the Special Housing Unit (SHU) within FCI-Butner, after he engaged in a verbal altercation with another inmate. The SHU is a secure, closely supervised facility within FCI-Butner that houses inmates whom prison officials have determined need separation from the general inmate population, either because the inmate

4

violated prison rules or because the inmate requires protective custody. See 28 C.F.R. §§ 541.21-541.23. Inmates in the SHU are allowed only five hours of outdoor recreation per week. About 100 inmates were housed in the SHU when Danser was assigned to that unit.

Theron Boyd is a correctional officer employed by the Federal Bureau of Prisons who worked in the SHU at FCI-Butner. On August 22, 2005, Boyd reported to the SHU and was assigned to a post that placed him in charge of the SHU's recreation area. The recreation area consists of eight fenced-in "recreation cages," which each are about ten feet long and ten feet wide and hold up to five inmates per cage. Among other responsibilities, Boyd was required to ask each SHU inmate if he wanted outdoor recreation, determine which inmates would be placed together in the recreation cages, and help transport inmates from their cells to the cages.

On the day of the incident, Danser informed Boyd that he wanted to participate in outdoor recreation. Boyd did not recall Danser expressing concerns to him about being placed in a recreation cage with any other inmate, and there is no evidence in the record showing that Boyd was aware that Danser was a sex offender.

Boyd made assignments to the recreation cages based on the inmates' custody level, the location of the inmates' cells

5

within the facility, and information contained in a computer-generated "SHU Report." As a general matter, the SHU Report includes each inmate's name, his prison identification number, and whether any inmate should be "kept separate" from any other inmate in the SHU ("separation orders").[1]

The SHU Report is compiled from information entered into the SHU computer by the "Officer-in-Charge" of the SHU. Danser did not name this officer as a defendant in this lawsuit, and it is undisputed that Boyd had no role in compiling or entering the information in the SHU Report.

The parties dispute the content of the information contained in the SHU Report that Boyd used in making the recreation cage assignments, including whether separation orders were included in the report.[2] However, it is undisputed that the SHU Report did not contain information concerning Danser's status as a sex offender or the gang affiliation of Danser's

---

[1] An inmate may be considered a "separatee" from another inmate if the two prisoners have engaged in physical violence toward each other or if prison officials have determined that physical violence would occur if the two inmates were placed together. Under prison rules, two inmates with separatee status toward each other are not allowed to participate in the same recreation period, even if the inmates are placed in different recreation cages.

[2] We observe that neither the SHU Report used by Boyd on the date of the incident, nor any examples of other SHU Reports from other dates, are included in the record.

assailant. Instead, that information was entered into the "Sentry" and "Central Information Monitoring" (CIM) systems, which are separate databases maintained by the Bureau of Prisons. As an officer in the SHU, Boyd had access to these databases but there is no evidence in the record that he was required to examine the two databases, or actually consulted either of them, in making the recreation cage assignments.

Boyd assigned Danser to a recreation cage with three other inmates, including Scott Gustin, a convicted drug dealer who is a member of the violent prison gang "La Nuestra Familia."[3] It is undisputed that Danser and Gustin had never met before being placed in the same recreation cage, and that there were no "separation orders" requiring that Danser and Gustin be kept apart from each other.

After placing the inmates in their recreation cages, Boyd left the recreation area. By leaving the area unsupervised, Boyd violated a duty specified in the orders for his post, which required that inmates in the recreation area remain supervised at all times.

---

[3] Gustin originally was sentenced to prison for charges relating to possession with intent to distribute heroin and methamphetamine, and was assigned to the SHU after assaulting another inmate.

7

While Boyd was away from the recreation area,[4] Gustin knocked Danser to the ground and repeatedly kicked and stomped his face, head, and body. Danser stated that Gustin uttered obscenities and commented on Danser's sex-offender status during the attack. After prison officials responded to the assault, Danser was transported to a local hospital where he received treatment for a ruptured spleen, a punctured lung, some broken ribs, and numerous bruises and abrasions. Boyd was not disciplined or reprimanded by his supervisors for his actions in connection with the incident.

Danser filed a complaint pursuant to <u>Bivens</u> against Patricia Stansberry, the Warden of FCI-Butner at the time of the incident,[5] in which he sought damages for his injuries.[6] Danser later filed an amended complaint (the complaint) naming Boyd and

---

[4] The parties dispute the amount of time that the area was left unsupervised, with Boyd asserting that he was gone for about one minute and Danser asserting that Boyd was away for at least five minutes.

[5] Danser also named two other prison officials, Officer Carmine Diaz, Jr., and Lieutenant Robert Dodson, as defendants in the original complaint. The district court granted summary judgment in favor of Diaz and Dodson based on qualified immunity, and Danser does not appeal from the court's dismissal of those defendants.

[6] The Supreme Court held in <u>Bivens</u> that a violation of the Fourth Amendment committed by a federal agent acting under color of his authority may give rise to a cause of action for damages. 403 U.S. at 397; <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 24 (1980) (extending <u>Bivens</u> to claims for Eighth Amendment violations).

his direct supervisor, Bobby Joe Roy, the Special Housing Lieutenant in charge of the SHU at the time of the attack, as additional defendants. Danser alleged in the complaint that Boyd, Stansberry, and Roy (collectively, the defendants) were deliberately indifferent to Danser's safety, and that his injuries resulting from the defendants' conduct constituted cruel and unusual punishment in violation of the Eighth Amendment (the deliberate indifference claim).

Following discovery, the defendants filed a motion seeking summary judgment based on qualified immunity. The district court denied the motion, holding that there were material disputed facts concerning whether the defendants violated Danser's constitutional rights. The defendants filed a timely notice of appeal.

## II.

### A.

We first address Danser's argument that we lack jurisdiction over this appeal, because our review of the district court's decision would require that we review whether the court's factual findings are supported by the record. We disagree with Danser's position.

Under the collateral order doctrine, we have jurisdiction to review a district court's denial of qualified immunity at the

summary judgment stage of the proceedings to the extent that the court's decision turned on an issue of law.  Cooper v. Sheehan, 735 F.3d 153, 157 (4th Cir. 2013); see Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (holding that a district court's denial of qualified immunity, "to the extent that [the decision] turns on an issue of law," is an appealable final decision under 28 U.S.C. § 1291).  We lack jurisdiction, however, if the decision was based on questions of evidentiary sufficiency properly resolved at trial.  Cooper, 735 F.3d at 157; Al Shimari v. CACI Int'l, Inc., 679 F.3d 205, 221-22 (4th Cir. 2012) (en banc); see also Gray-Hopkins v. Prince George's Cnty., 309 F.3d 224, 229 (4th Cir. 2002) (courts of appeal lack jurisdiction to determine in an immediate appeal of denial of qualified immunity whether the evidence is sufficient to support the facts as set forth by the district court).

In this matter, contrary to Danser's suggestion, our review of the district court's holding does not require that we reweigh the evidence or resolve any disputed material factual issues. See Iko v. Shreve, 535 F.3d 225, 234 (4th Cir. 2008).  Rather, we determine as a matter of law whether the defendants violated Danser's constitutional rights, considering the facts as the district court viewed them as well as any additional undisputed facts.  See Winfield v. Bass, 106 F.3d 525, 529-30, 532 n.3 (4th Cir. 1997) (en banc).  Accordingly, we conclude that we have

10

jurisdiction over this appeal, and we proceed to address the merits of the defendants' qualified immunity defenses.

B.

Boyd, Stansberry, and Roy argue that the district court erred in denying their motion for summary judgment asserting qualified immunity. They contend that, as a matter of law, the undisputed material evidence failed to establish that they violated Danser's constitutional rights. Before we address each defendant's argument, we first set forth the applicable legal principles.

We review de novo the denial of a motion for summary judgment asserting qualified immunity. Iko, 535 F.3d at 237. Summary judgment in such cases should be granted when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Id. at 230; Fed. R. Civ. P. 56(c). In reviewing the district court's decision denying qualified immunity, we generally accept the facts as the court viewed them. Winfield, 106 F.3d at 530. Additionally, we may also consider any undisputed facts that the court did not use in its analysis. See id. at 532 n.3, 535-36.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

11

officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine protects government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An official asserting the defense of qualified immunity bears the burden of proof with respect to that defense. Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013) (citation omitted).

In reviewing a district court's decision rejecting a defendant's assertion of qualified immunity, we apply the analysis set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), as modified by the Court's later decision in Pearson. See Meyers, 713 F.3d at 731. The Court's holding in Saucier requires a two-step approach, under which a court first must decide whether the undisputed facts show that the government official's actions violated the plaintiff's constitutional rights. Id. (citing Saucier, 533 U.S. at 201). When the plaintiff has satisfied this initial step, a court must determine whether the right at issue was "clearly established" at the time of the events in question.[7] Id. (citing Saucier, 533

---

[7] Thus, although a plaintiff may prove that an official has (Continued)

12

U.S. at 201); see Pearson, 555 U.S. at 236 (modifying the Saucier approach such that courts are no longer required to conduct the analysis in the sequence set forth in Saucier).

In this case, we focus our analysis on the first prong of the Saucier test, namely, whether Danser has established for purposes of summary judgment that the defendants violated one of his constitutional rights. The constitutional right at issue is Danser's Eighth Amendment right to be protected from violence committed by other prisoners. See Farmer, 511 U.S. at 833-35. This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Id. at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." Id. at 833 (citations and internal quotation marks omitted).

---

violated the plaintiff's constitutional rights, the official nonetheless is entitled to qualified immunity if a reasonable person in the official's position "could have failed to appreciate that his conduct would violate those rights." Meyers, 713 F.3d at 731 (citation and internal quotation marks omitted).

An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. Id. at 834; Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[8] Brown, 612 F.3d at 723; see also De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013). It is undisputed here that Danser's injuries qualify as "significant" under this first element.

The second element, which forms the core of the present dispute, requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834

---

[8] We observe that in Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (per curiam), the Supreme Court rejected the "significant injury" requirement in the context of an Eighth Amendment excessive force claim concerning an assault committed by a corrections officer. The Court's decision emphasized that in cases involving the use of force committed by a prison official, the "core" inquiry was not the degree of harm the prisoner suffered but rather whether the official used force "'maliciously and sadistically to cause harm.'" Id. at 37 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). We do not discern anything in the Wilkins decision that casts doubt on our requirement that an inmate show a significant injury in deliberate indifference cases, as opposed to excessive force cases such as Wilkins. Indeed, in a case issued after Wilkins, we applied the significant injury requirement to an Eighth Amendment deliberate indifference claim involving allegations of inadequate medical treatment. See De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013).

14

(citation and internal quotation marks omitted).  In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety."  Id. (citations omitted).

A plaintiff establishes "deliberate indifference" by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Id. at 837. Importantly, deliberate indifference is "a very high standard," Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety.  Farmer, 511 U.S. at 837.  Notably, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.; see also id. at 840-42 (evidence concerning "constructive notice" of a substantial risk is generally not sufficient proof to establish a deliberate indifference claim); Rich v. Bruce, 129 F.3d 336, 338-40 (4th Cir. 1997).  A "showing of mere negligence" will not suffice. Grayson, 195 F.3d at 695.  Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not" will not give rise to a claim under the Eighth Amendment.  Farmer, 511 U.S. at 838; Iko, 535 F.3d at 241 (stating that "[i]t is not enough that the [defendant] should

15

have recognized" a substantial risk of harm for purposes of a deliberate indifference claim) (citation and internal quotation marks omitted).

1.

We turn to address Boyd's argument that the district court erred in concluding that he is not entitled to qualified immunity. Boyd asserts that he did not have a culpable mental state amounting to deliberate indifference, because he was not aware of any facts suggesting that Gustin posed a particular threat to Danser. In response, Danser argues that Boyd was not entitled to summary judgment because a jury could determine that, based on information available to Boyd, Boyd knew that placing Danser and Gustin in the same recreational cage and leaving the area unsupervised would create an excessive risk to Danser's safety. We disagree with Danser's argument.

In this procedural posture, we are limited in our consideration of the parties' arguments to the district court's factual findings and any additional undisputed facts. Winfield, 106 F.3d at 530, 534. The district court based its decision on the undisputed facts that Boyd assigned Danser, a convicted sex offender, to the same recreation cage as Gustin, a violent gang member, and that Danser's injuries occurred when Boyd left the area unsupervised in violation of his duties. The court further noted that Boyd relied on information provided to him in the SHU

16

Report, and that the SHU Report did not include any data about the inmates' sex offender status or gang affiliation. However, the court concluded that there was a "material fact in question as to whether the information provided to [Boyd] had the separation orders apparent on the [SHU] report."[9]

Critically, the district court's analysis did not include any findings concerning the fundamental issue whether Boyd had a "sufficiently culpable state of mind," namely, that he "kn[ew] of and disregard[ed] an excessive risk to [Danser's] health or safety" in assigning him to the same recreation cage as Gustin. Farmer, 511 U.S. at 834, 837 (citations and internal quotation marks omitted). Moreover, there is no evidence in the record that Boyd was aware Danser was a sex offender, or that Boyd was required to check the prison databases in which that information was contained.[10]

---

[9] The district court also considered whether the information generally included on the SHU Report was sufficient and the fact that Boyd was not disciplined for his actions in connection with the attack. Because Boyd was not responsible for the content of the SHU Report or for his own discipline, these issues are not relevant in deciding whether he is entitled to qualified immunity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (liability in a Bivens case is personal, based upon each defendant's own actions).

[10] Danser's unsupported speculation to the contrary is insufficient to create a disputed issue of material fact for purposes of summary judgment. See Othentec Ltd. v. Phelan, 526 F.3d 135, 142 (4th Cir. 2008) (defendants' mere access to information insufficient to show on summary judgment that (Continued)

17

The record also lacks any evidence of separation orders issued before the attack requiring that Danser and Gustin be separated from each other. The mere fact that Danser and Gustin each had separation orders with respect to other inmates does not show that Boyd would have appreciated the risk posed by putting Danser and Gustin in the same recreation cage. Thus, although the district court concluded that there were disputed facts concerning the content of the SHU Report relating to existing separation orders, that factual dispute was not material to Boyd's assertion of qualified immunity based on his lack of knowledge that Danser and Gustin should be separated from each other. See Al Shimari, 679 F.3d at 221-22 (whether a disputed fact is material may be considered in an appeal of the denial of qualified immunity on summary judgment).

With regard to Boyd's act of leaving the recreation area unsupervised, it is undisputed that this act was a violation of Boyd's responsibilities. However, there is no evidence in the record showing that this dereliction of duty constituted

_____

defendants actually used that information); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (conclusory assertions about defendant's motivation and state of mind not sufficient to withstand summary judgment); cf. Odom v. S.C. Dep't of Corr., 349 F.3d 765, 771-72 (4th Cir. 2003) (prison officials not entitled to qualified immunity at summary judgment because affirmative evidence showed they knew of and disregarded an excessive risk to plaintiff's safety).

18

anything other than negligence. Because the record lacks any evidence that Boyd knew that Gustin posed a particular danger to Danser, the record as a matter of law fails to show that Boyd must have appreciated that his act of leaving Danser and Gustin together in an unsupervised area created an excessive risk to Danser's safety on that basis. See Farmer, 511 U.S. at 837. Accordingly, although Boyd may well have been negligent in his actions, the evidence on which Danser relies fails to show that Boyd acted with deliberate indifference.

Danser nevertheless argues that it was "obvious" to Boyd that placing Danser in a recreation cage with Gustin and leaving the area unsupervised would have led to an attack. See id. at 842 (evidence showing that a substantial risk of harm was "obvious" constitutes circumstantial evidence that a defendant was actually aware of that risk). However, the district court did not conclude that the risk was obvious to Boyd, nor, as discussed above, does the record suggest that the risk was obvious given the lack of evidence concerning Boyd's awareness of Danser's sex-offender status. To establish that a risk is "obvious" in this legal context, a plaintiff generally is required to show that the defendant "had been exposed to information concerning the risk and thus must have known about it." Id. (citation and internal quotation marks omitted). On this record, there is no evidence that Boyd was exposed to such

19

information. Thus, as a matter of law, the record fails to support Danser's claim that Boyd violated his Eighth Amendment rights. Accordingly, we conclude that the district court erred in denying Boyd's motion for summary judgment asserting qualified immunity.

2.

We next address the arguments of Stansberry and Roy challenging the district court's denial of qualified immunity. Stansberry and Roy argue that they did not violate Danser's constitutional rights because there is no evidence that they had any personal involvement in the events leading up to the attack, or that they were aware of an excessive risk to Danser's safety. In response, Danser argues that Stansberry and Roy were not entitled to qualified immunity because, as Boyd's supervisors, they "tacitly authorized" Boyd's actions by failing to discipline him for his role in the assault. See Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984). We disagree with Danser's argument.

We first set forth the entirety of the district court's analysis concluding that Stansberry and Roy were not entitled to qualified immunity:

> [T]o the extent that FCI-Butner or the SHU had a policy or practice of ignoring or failing to update the BOP classifications in Sentry and the CIM system, or failed to adhere to acknowledged correctional best practices regarding the protection of sex offenders,

20

> Boyd's supervisors, defendant Lieutenant Roy, as the Special Housing Lieutenant in charge of the SHU, and defendant Warden Stansberry[,] are directly responsible and not shielded by qualified immunity for the purposes of summary judgment.

The district court's brief analysis concerning Stansberry and Roy is problematic in several respects. As an initial matter, government officials cannot be held liable in a Bivens case under a theory of respondeat superior for the actions of their subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Rather, liability may be imposed based only on an official's own conduct. Id. at 676-77; Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001); see also McWilliams v. Fairfax Cnty. Bd. of Supervisors, 72 F.3d 1191, 1197 (4th Cir. 1996) (supervisors may not be held liable under 42 U.S.C. § 1983 for actions of subordinate employees unless the supervisors have "direct culpability" in causing the plaintiff's injuries), overruled on other grounds by Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998).

The district court's analysis fails to apply these legal principles. The court's observation that Stansberry and Roy were "directly responsible" cannot be reconciled with the court's failure to identify any conduct of Stansberry and Roy supporting this conclusion. Moreover, the record fails to reveal any such evidence, or other evidence that FCI-Butner or the SHU "had a policy or practice of ignoring or failing to

21

update the BOP classifications in Sentry and the CIM system." Thus, all that is present in the record before us is the mere fact that Stansberry and Roy were Boyd's supervisors, and under Iqbal that is insufficient as a matter of law to conclude that Stansberry and Roy violated Danser's Eighth Amendment rights. See 556 U.S. at 676.

Our conclusion is not altered by Danser's argument that Stansberry and Roy are not entitled to qualified immunity because they "tacitly authorized" Boyd's actions by failing to discipline him after the incident. At its core, Danser's argument reflects a misperception of the "tacit authorization" theory, which focuses on information known to a supervisor before an incident occurs. See Shaw v. Stroud, 13 F.3d 791, 798-800 (4th Cir. 1994). A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place. See McWilliams, 72 F.3d at 1197; Slakan, 737 F.2d at 373. Here, there is no evidence in the record that either Stansberry or Roy was aware before the date of Danser's attack of any alleged defects in the assignment process for the recreation cages or of a pattern of officers leaving the recreation area unattended. Therefore, neither Stansberry nor Roy may be held liable under a tacit authorization theory. See McWilliams, 72 F.3d at 1197;

22

Slakan, 737 F.2d at 373. Accordingly, based on the record before us, we conclude as a matter of law that the district court erred in denying the summary judgment motion of Stansberry and Roy.[11]

## III.

For these reasons, we vacate the district court's order denying the defendants' motion for summary judgment. We remand the matter to the district court with instructions that the court enter an order granting judgment in the defendants' favor on the ground of qualified immunity.

VACATED AND REMANDED WITH INSTRUCTIONS

---

[11] Having concluded that the defendants did not violate Danser's constitutional rights, we need not analyze under the second Saucier prong whether such rights were clearly established at the time of these events. See 533 U.S. at 201.

23