**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-6306**

JAMEY L. WILKINS,

                Plaintiff - Appellee,

        v.

LIEUTENANT UPTON; GERALD BRANKER,

                Defendants - Appellants,

        and

OFFICER THOMPSON; EBONY MUZONE,

                Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:12-ct-03050-BO)

Submitted:  January 29, 2016          Decided:  March 2, 2016

Before NIEMEYER, MOTZ, and HARRIS, Circuit Judges.

Vacated and remanded with instructions by unpublished per curiam opinion.

Roy Cooper, North Carolina Attorney General, Kimberly D. Grande, Assistant Attorney General, Raleigh, North Carolina, for Appellants.  Michele Luecking-Sunman, NCPLS, INC., Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Upton and Gerald Branker appeal from the district court's order denying their motion for summary judgment premised on qualified immunity in Jamey Lamont Wilkins' 42 U.S.C. § 1983 (2012) civil rights action. We vacate and remand with instructions that the district court enter judgment in favor of Branker and Upton.

I.

Wilkins is an inmate in the custody of the North Carolina Department of Public Safety and has been in such custody since July 2000. In 2010 and 2011, Wilkins was housed in a unit for inmates undergoing inpatient mental health care—Unit Six—at Central Prison in Raleigh, North Carolina. From April 2010 until June 2011, Wilkins was repeatedly sexually abused by Officer Thompson—who was then employed as a correctional officer and worked in Unit Six—at Central Prison.

During visits to Wilkins' cell in Unit Six, Thompson learned of Wilkins' concern for his mother—who had been diagnosed with breast cancer—and his vulnerable state of mind. Thompson wrote letters to Wilkins and brought them to his cell and asked Wilkins to masturbate in front of him. Despite Wilkins' initial refusal to do so, Thompson brought pornographic materials to Wilkins and repeatedly asked Wilkins to masturbate so Thompson could watch. Thompson promised Wilkins money, help to get out of prison, and

3

help for Wilkins' mother. After repeated instances of sexual harassment and several gifts from Thompson, Wilkins felt as though he had no choice but to masturbate in front of Thompson. From April 2010 to June 2011, Wilkins was repeatedly sexually abused by Thompson; the abuse consisted of multiple acts of masturbation, oral sex, and anal sex. Thompson brought contraband to Williams, including pornographic magazines, an "ecstasy pill," drugs, money, and phones. Wilkins used the phones to talk with his mother and with Thompson and accepted contraband from Thompson because he would "do anything" to talk with his mother. Wilkins felt he had no choice but to comply with Thompson's sexual demands because he feared losing direct access to his mother, the possibility of going home, and the gifts from Thompson. Wilkins attempted to report the abuse to two non-Defendant officials at Central Prison at unspecified times but was not successful.

Following an internal investigation regarding contraband at Central Prison, Thompson resigned from employment on June 8, 2011. The next day, a Prison Rape Elimination Act[*] (PREA) investigation was initiated by a non-Defendant unit manager after Wilkins gave a note to a non-Defendant lieutenant stating that he wished to speak with her about staff sexual misconduct. During the course

---

[*] See Prison Rape Elimination Act of 2003, Pub. L. No. 108-79, 117 Stat. 972 (codified at 42 U.S.C. §§ 15601-09 (2012)).

of the PREA investigation, Wilkins identified Thompson as the person who offered him money if he masturbated while Thompson watched, promised him help and gave him a cellular phone number, and performed oral sex on and masturbated him in Unit Six. After conducting additional interviews, the unit manager concluded that Wilkins' allegations against Thompson could not be substantiated.

Branker served as the warden of Central Prison from July 2007 through November 2011. He became aware of Wilkins' allegations against Thompson following Thompson's resignation. Branker, however, never witnessed Thompson act "unprofessionally" toward Wilkins at any time. Upton has been employed as a lieutenant at Central Prison since 2007. He also became aware of Wilkins' allegations against Thompson following Thompson's resignation. Upton also never witnessed Thompson act "unprofessionally" toward Wilkins at any time. Branker and Upton also both aver without contradiction in the evidence that Thompson had never been investigated for or disciplined for "undue familiarity" with an inmate or for "PREA related conduct."

Wilkins filed an amended § 1983 complaint against Thompson, Branker, and Upton. As relevant here, Wilkins' complaint asserted Fourth and Eighth Amendment claims against Branker and Upton for deliberate indifference to the sexual abuse and harassment perpetrated by Thompson—an employee under their supervision—and for facilitating "the violation of his right to be free from cruel

5

and unusual punishment, sexual abuse, unwanted touching, verbal abuse, threats, and for violations of his rights to privacy and bodily integrity."  Branker and Upton moved for summary judgment on the basis of qualified immunity, and the district court denied the motion.  Branker and Upton noted a timely appeal.  We have jurisdiction to review the district court's order.  See Danser v. Stansberry, 772 F.3d 340, 344-45 (4th Cir. 2014).

## II.

"We review de novo the denial of a motion for summary judgment asserting qualified immunity."  Id. at 345.  "Summary judgment in such cases should be granted when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law."  Id.

"The doctrine of qualified immunity 'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  Id. (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  Qualified immunity is an affirmative defense to liability under § 1983 and shields government officials from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of

6

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In reviewing a district court's decision rejecting a defendant's assertion of qualified immunity, we apply the analysis set forth in the Supreme Court's decision Saucier v. Katz, 533 U.S. 194 (2001), as modified by the Court's later decision in Pearson. The holding in Saucier requires a two-step approach under which a court must ask first whether the facts, viewed in the light most favorable to the plaintiff, show that the official's actions violated a constitutional right, and, second, whether the right alleged to have been violated was clearly established at the time the violation occurred, such that a reasonable person would have known that his conduct was unconstitutional. Saucier, 533 U.S. at 201. As a result of Pearson, courts may consider the steps out of this order in light of the circumstances of the particular case at hand. Pearson, 555 U.S. at 236.

In this case, our analysis is focused on the first prong of this test, namely, whether Wilkins established for summary judgment purposes that Branker and Upton violated his constitutional rights.

To succeed under § 1983 on a claim for a violation of the Eighth Amendment, an inmate must "show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler

7

v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted). Not every injury suffered by a prisoner, however, "translates into constitutional liability for prison officials." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Only extreme deprivations are adequate to satisfy" this objective component. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate such an extreme deprivation, the inmate must show "a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003) (internal quotation marks omitted).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (internal quotation marks omitted). A prison official is deliberately indifferent to a substantial risk of harm to an inmate if that official "knows of and disregards" the risk. Farmer, 511 U.S. at 837. To be liable under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Parrish, 372 F.3d at 302 (internal quotation marks omitted). "A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for

8

example, that the substantial risk of [sexual assault] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation marks omitted). Beyond such actual knowledge, the prison official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

Additionally, "[t]he protections of the Fourth Amendment are triggered when an individual seeking refuge under the [] Amendment has a legitimate expectation of privacy in the invaded place or the item seized." Doe v. Broderick, 225 F.3d 440, 450 (4th Cir. 2000) (internal quotation marks omitted). "A legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched that society is willing to recognize as reasonable." Id. (internal quotation marks, alteration, and ellipsis omitted). In this Circuit, an inmate's right to bodily privacy in prison encompasses the involuntary exposure of his genitals in the presence of the opposite sex. See Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981). The Eighth Amendment, however, stands as the primary constitutional limitation

associated with an inmate's bodily integrity beyond this limited privacy right.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 530 (1984).

For supervisory prison officials to be held liable under § 1983 for constitutional injuries inflicted by their subordinates, an inmate must establish that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable" risk of constitutional injury; (2) the supervisor's response to this knowledge was so inadequate as to show "deliberate indifference or tacit authorization" of the offensive practices; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered.  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Supervisory officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

III.

A.

After review of the record and the parties' briefs, we conclude there is no evidence in the record that Branker and Upton had any personal involvement in the sexual harassment and abuse of Wilkins or were aware of any substantial risk Thompson posed to Wilkins, such that they were liable to Wilkins for violations of

10

the Eighth Amendment.  The record makes clear that Wilkins did not identify Branker and Upton has having been "involved in" his sexual abuse, and it undisputed that no person reported Thompson's behavior to or abuse of Wilkins (or any allegations regarding such behavior or abuse) to Branker or Upton prior to Thompson's resignation.

In rejecting Branker's and Upton's request for qualified immunity, the district court relied on Wilkins' assertions that, despite his attempts to report the assaults, Branker and Upton took "no action" to ensure that he had access to an "effective" reporting system, to forbid Thompson from going into areas of Unit Six where he was not assigned, or to ensure that Thompson had no unsupervised access to Wilkins.  On the record evidence, however, we conclude there was no basis for Branker and Upton to take any steps to prevent Thompson's unsupervised access to Wilkins on Unit Six or take unspecified steps to ensure some "effective" system for reporting his abuse of Wilkins because Branker and Upton had no knowledge of Thompson's actions prior to Wilkins' post-resignation complaint or any basis to believe that Thompson posed a risk of harm to Wilkins.

The district court's order also relies on its conclusion that there were "considerable and known problems" within the mental health unit pertaining to supervision and that sexual assaults in prison are "widely prevalent and well known."  The record evidence,

11

however, provides no support for such conclusions in this case. There is no indication from the record that sexual assaults or a risk thereof was prevalent or even extant at Central Prison. Additionally, although the record contains an undated report addressing medical and mental health care practices and operational practices of the mental health unit within Central Prison, the report does not address sexual assault at Central Prison, and there further is no indication from the record that Branker and Upton were aware of the report or its contents. Further, although the record contains Wilkins' uncontested averment that the physical configuration of Unit Six made it impossible for an officer in the unit's control booth to see into his cell, there is no basis in the record from which to conclude that Branker and Upton actually perceived or had to have known about any risk Thompson posed to Wilkins in the unit as a consequence of its physical configuration.

The lack of record evidence establishing that Upton and Branker had any knowledge regarding Thompson's actions or any risk he may have posed to Wilkins prior to his resignation also is fatal to Wilkins' claim for supervisory liability under the Eighth Amendment. In the absence of any knowledge of Thompson's conduct prior to his resignation, Branker and Upton could not have been deliberately indifferent to or tacitly authorized the same. Branker and Upton thus were not liable to Wilkins for an Eighth

12

Amendment violation.  The district court's conclusion to the contrary was erroneous as a matter of law.

B.

We further conclude there is no evidence of record supporting the conclusion that Branker and Upton violated Wilkins' rights under the Fourth Amendment.  There is no indication from the record that Wilkins had his genitals exposed involuntarily to persons of the opposite sex.  In the absence of such an occurrence, there is no basis to conclude that Branker and Upton are liable to Wilkins for a Fourth Amendment violation on account of their own conduct or in a supervisory capacity.  The district court's rejection of qualified immunity to Branker and Upton on Wilkins' Fourth Amendment claims also was error as a matter of law.

IV.

We therefore vacate the district court's order and remand this matter to the district court with instructions that the court enter an order granting judgment in Branker's and Upton's favor on the ground of qualified immunity. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

VACATED AND REMANDED WITH INSTRUCTIONS

14