PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OPHELIA AZRIEL DE'LONTA, a/k/a M.
Stokes,

*Plaintiff-Appellant,*

v.

RONALD J. ANGELONE; M. V. SMITH;
R. HULBERT, Dr.; COLIN C.J.
ANGLIKER, Dr.; DOCTOR WRAY,

*Defendants-Appellees,*

and

DONALD SWETTER, M.D.,

*Defendant.*

No. 01-8020

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-99-642-7)

Argued: April 3, 2003

Decided: May 27, 2003

Before WILKINS, Chief Judge, and MOTZ and
KING, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Wilkins
wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Kelly Marie Baldrate, VICTOR M. GLASBERG &
ASSOCIATES, Alexandria, Virginia, for Appellant. Peter Duane

Vieth, WOOTENHART, P.C., Roanoke, Virginia, for Appellees. **ON BRIEF:** Victor M. Glasberg, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia; Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF VIRGINIA, Richmond, Virginia, for Appellant. George W. Wooten, WOOTENHART, P.C., Roanoke, Virginia; William W. Muse, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

---

## OPINION

WILKINS, Chief Judge:

Virginia inmate Ophelia Azriel De'lonta (born Michael A. Stokes) appeals a district court order dismissing for failure to state a claim, *see* 28 U.S.C.A. § 1915(e)(2)(B)(ii) (West Supp. 2002), her complaint under 42 U.S.C.A. § 1983 (West Supp. 2002) claiming prison officials have denied her adequate medical treatment in violation of the Eighth Amendment. Because we conclude that it does not appear beyond doubt that De'lonta cannot prove facts to support her claim, we reverse and remand for further proceedings.

### I.[1]

De'lonta suffers from gender identity disorder (GID) (also known as gender dysphoria or transsexualism), a disorder characterized by a feeling of being trapped in a body of the wrong gender. She[2] has undergone various procedures to make herself appear more feminine, including dermabrasions and a chemical face peel. She has also

---

[1]Because the district court dismissed De'lonta's complaint for failure to state a claim, we accept all of the allegations in her complaint as true, construing her pro se complaint liberally. *See Estelle v. Gamble*, 429 U.S. 97, 99, 106 (1976); *DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000) (stating that same standards apply to dismissals under § 1915(e)(2)(B)(ii) as apply to dismissals under Fed. R. Civ. P. 12(b)(6)).

[2]We use feminine pronouns to refer to De'lonta, as did the district court.

received estrogen treatment to slow hair growth, soften her skin, and develop breasts and other female characteristics.

De'lonta has been in the custody of the Virginia Department of Corrections (VDOC) since 1983. Since the beginning of her imprisonment, VDOC doctors have consistently diagnosed her as suffering from GID, and De'lonta received estrogen therapy for the disorder in 1993 while in Greensville Correctional Center. This treatment continued until 1995, when De'lonta was transferred to Mecklenburg Correctional Center and her hormone treatment was terminated pursuant to a then-recently created VDOC policy ("the Policy"). The Policy is outlined in a memo dated September 19, 1995, from VDOC Chief Physician M. Vernon Smith:

> It is the policy of the Department of Corrections[ ] that neither medical nor surgical interventions related to gender or sex change will be provided to inmates in the management of [GID] cases.
>
> If an inmate has come into prison and/or is currently receiving hormone treatment, he is to be informed of the department['s] policy and the medication should be tapered immediately and thence discontinued.
>
> Inmates presenting with [GID] should be referred to the institution[']s mental health staff for further evaluation.

J.A. 28.

In contravention of the directive that hormone treatment be tapered off, De'lonta's hormone treatment was terminated abruptly, causing De'lonta to suffer nausea, uncontrollable itching, and depression.

The most harmful effect of the cessation of the hormone treatment, however, was that De'lonta developed an uncontrollable urge to mutilate her genitals. Although she had engaged in some self-mutilation previously, it had consisted primarily of cutting her arms and hands. Since termination of the hormone treatment, however, she has stabbed or cut her genitals on more than 20 occasions. She has repeatedly

requested resumption of the hormone therapy and treatment by a gender specialist. To date, however, her requests have been denied, and her self-mutilation has continued.

In 1999, De'lonta filed suit against Dr. Smith, other Virginia prison doctors, and VDOC Director Ron Angelone (collectively, "Appellees"), alleging that Appellees have inflicted cruel and unusual punishment on her, in violation of her Eighth Amendment rights, by denying her adequate medical treatment for her GID. She sought an injunction requiring Appellees to arrange for her to be treated by a doctor with expertise in transsexualism and to allow her to resume her hormone therapy until that treatment commenced. She also requested declaratory and monetary relief, including punitive damages.

Angelone responded by filing a summary judgment motion with an attached affidavit. The other Appellees moved to dismiss for failure to state a claim. The district court dismissed De'lonta's claims against all Appellees pursuant to 28 U.S.C.A. § 1915(e)(2)(B)(ii), concluding that the record demonstrated beyond doubt that she could not plead facts that would state a valid Eighth Amendment claim. Regarding De'lonta's entitlement to adequate treatment for her GID, the court ruled that the record was clear that De'lonta was receiving *some* treatment. The court concluded that the gravamen of De'lonta's claim was simply a disagreement with the medical judgment concerning what treatment was appropriate and that such a disagreement did not state a claim under the Eighth Amendment. The court also concluded that the failure of the VDOC to follow its tapering policy in 1995 did not rise to the level of an Eighth Amendment violation. The court further ruled that any claim for equitable relief from that conduct had become moot, and any legal claim was time-barred.

In addition, the court denied a motion by De'lonta to amend her complaint, concluding that amendment would be futile. Finally, although the court stated that it was "unable to conceive of any set of facts under which the Eighth Amendment would entitle" De'lonta to relief, the court dismissed her complaint without prejudice "[t]o avoid complicating any future actions with issues of collateral estoppel or claim preclusion."[3] J.A. 183, 188.

---

[3]Although a dismissal without prejudice is not normally appealable, because the grounds provided by the district court for dismissal "clearly

## II.

De'lonta has not challenged the district court ruling that the abruptness of the termination of her hormone therapy did not violate the Eighth Amendment. She does argue, however, that the district court erred in dismissing her remaining claims. The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). Thus, we review a § 1915(e)(2)(B)(ii) dismissal de novo. *See id.* "A complaint should not be dismissed for failure to state a claim upon which relief may be granted unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). Additionally, the allegations in pro se complaints should be liberally construed.[4] *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam).

De'lonta's claim arises under the Eighth Amendment. Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The Amendment also provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Those conditions include the adequacy of the medical care that the prison provides. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

---

indicate that no amendment in the complaint could cure the defects in the plaintiff's case," we conclude that the order dismissing De'lonta's complaint is an appealable final order. *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993) (alteration & internal quotation marks omitted).

[4]In dismissing this action, the district court considered all documents attached to De'lonta's complaint and to her proposed amended complaint. Because the parties agree that such consideration was appropriate, we have also used the materials to the extent that they clarify the allegations in the complaint.

The showing necessary to demonstrate that particular conduct by prison officials is sufficiently serious to constitute cruel and unusual punishment "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and (2) that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (second alteration in original) (quoting *Wilson*, 501 U.S. at 298). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson*, 503 U.S. at 8-9. In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler*, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions, *see Helling*, 509 U.S. at 33-35. The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Here, De'lonta contends that her complaint, when liberally construed, alleges facts sufficient to establish that the denial of treatment for her compulsion to mutilate herself constitutes deliberate indifference to her medical needs. In particular, she claims she could prove that (1) Appellees know that she suffers from GID; (2) she was receiving treatment until 1995, when it was abruptly terminated for no legitimate reason; (3) the termination of the therapy has resulted in compulsive, repeated self-mutilation of her genitals; and (4) after Appellees terminated the hormone treatment, they have refused to provide any treatment to prevent her from mutilating herself, leaving her at continued risk for serious, self-inflicted injuries. We agree with De'lonta that such allegations adequately state a claim for relief and

that the record does not demonstrate beyond doubt that De'lonta could not prove those allegations.

First, De'lonta's need for protection against continued self-mutilation constitutes a serious medical need to which prison officials may not be deliberately indifferent. *See Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981) (explaining that "prison officials have a duty to protect prisoners from self-destruction or self-injury"). And, nothing in the record refutes the allegation that Appellees know that De'lonta's compulsive self-mutilation began after the discontinuation of her hormone therapy. Nor does the limited record before us demonstrate any justification (although there may be one not yet disclosed) for either the policy requiring termination of De'lonta's hormone treatment or the alleged denial of any other treatment to prevent her continuing self-inflicted injuries.

In dismissing De'lonta's suit, the district court incorrectly determined, based on the limited record before it, that the suit was nothing more than a challenge to the medical judgment of VDOC doctors. This conclusion was based largely on a memorandum to Appellee Smith, the VDOC Chief Physician, in which a Dr. Rob Marsh reported that De'lonta had requested a referral to a gender specialist at the Medical College of Virginia (MCV) for the purpose of discussing hormone replacement. The memo states that De'lonta "was advised that [Dr. Marsh] did not feel it was a medical necessity or indication," but that Dr. Marsh would forward the request to Dr. Smith for further review. J.A. 87. Based on this memo, the district court concluded that the prison medical staff "did not feel that hormone therapy or a special consultation were appropriate," *id.* at 185, and therefore that the suit amounted to nothing more than a challenge to this medical judgment. For this reason, the court concluded that De'lonta's remedy could lie only in a state medical malpractice action and not in an Eighth Amendment claim. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) (holding that "[q]uestions of medical judgment are not subject to judicial review" under § 1983).

We conclude that the district court was in error. Even assuming that Dr. Marsh advised De'lonta as the memo states, nothing in the record suggests that Dr. Marsh's opinion was a basis for the denial of De'lonta's requested treatment. In fact, Dr. Smith's response to the

memo, which states that there was no gender specialist at MCV and that VDOC's policy is not to provide hormone therapy to prisoners, supports the inference that Appellees' refusal to provide hormone treatment to De'lonta was based solely on the Policy rather than on a medical judgment concerning De'lonta's specific circumstances. *Cf. Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986) (holding that prisoner who had engaged in self-mutilation was not entitled to hormone treatment for gender dysphoria because denial of such treatment was based on "an informed [medical] judgment").

Moreover, Dr. Marsh's memo is at most only a comment on the appropriateness of one possible treatment and does not refute De'lonta's claim that she has not received any treatment to suppress her compulsion to mutilate herself. *Cf. id.* ("This case . . . does not present a situation where there was a total failure to give medical attention."); *id.* at 967 (Seymour, J., dissenting) (concluding that deliberate indifference claim "was plainly not unfounded" when "record contain[ed] no proof that prison physicians ever addressed whether [prisoner's] self-mutilation might have been . . . in need of treatment"). *But cf. Maggert v. Hanks*, 131 F.3d 670, 672 (7th Cir. 1997) (holding that prisoner was not constitutionally entitled to curative treatment for gender dysphoria, but not indicating that prisoner was at risk for self-mutilation or other serious bodily harm). At oral argument, Appellees argued that even if Dr. Marsh's memo does not show that De'lonta received treatment for her GID, De'lonta's other submissions demonstrate that she has been housed at a facility for inmates who need special attention to mental health issues and that De'lonta has received counseling and anti-depressants. Appellees pointed specifically to a mental health evaluation stating that De'lonta had "been receiving Prozac and . . . Doxepin which appear to assist h[er] in h[er] mood symptoms" and that "[De'lonta states] that the Prozac helps h[er] with h[er] urges to cut on h[er]self." J.A. 90. These submissions, however, only indicate that some treatment De'lonta received may have alleviated her compulsion to mutilate herself; they do not clearly demonstrate that the treatment was provided for that purpose or that it was deemed to be a reasonable method of preventing further mutilation.

For all of these reasons, we conclude that it does not appear beyond doubt at this early stage of the litigation that De'lonta cannot prove

facts sufficient to support her claim that she has not received constitutionally adequate treatment to protect her from her compulsion to mutilate herself. We therefore reverse the district court order dismissing De'lonta's suit and remand to the district court for further proceedings. In so doing, we make no comment on the merits of any issues not yet addressed by the district court, and we specifically make no comment on the type of treatment, if any, to which De'lonta is entitled.

### III.

In sum, we reverse the dismissal of De'lonta's § 1983 suit and remand to the district court for further proceedings consistent with this opinion.[5]

*REVERSED AND REMANDED*

---

[5]Appellees argue that Angelone should be dismissed from this suit even if De'lonta has stated a valid Eighth Amendment claim against other Appellees. Because the district court has yet to rule on this issue, we decline to do so in this appeal.

De'lonta's motions to supplement the record are denied.