**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7611**

JAMES GARY MOSKOS,

        Plaintiff – Appellant,

v.

JAMES HARDEE; KATHERINE BUTLER; JAMES HORNE; LARON LOCKLEAR; JAMES MCRAE; ROSE LOCKLEAR,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:16-ct-03177-BO)

Argued:  December 7, 2021                              Decided:  January 20, 2022

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:**  Jason Michael Burton, BURTON LAW FIRM, PLLC, Raleigh, North Carolina, for Appellant.  Sripriya Narasimhan, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.  **ON BRIEF:**  Michael A. Kaeding, Ryan Ethridge, ALSTON & BIRD LLP, Raleigh, North Carolina, for Appellant.  Joshua H. Stein, Attorney General, Orlando L. Rodriguez, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

WILKINSON, Circuit Judge:

James Gary Moskos, a state prisoner in North Carolina, sued several prison officials under § 1983, alleging that they had used excessive force against him, had acted with deliberate indifference to his serious medical needs and to unconstitutional conditions of his confinement, and had violated his due process rights. Moskos also brought a state-law assault and battery claim. At trial, the district court granted judgment as a matter of law to the defendants on the deliberate indifference and due process claims, while a jury found for the defendants on the remaining claims. Moskos now appeals, contesting the district court's grant of judgment as a matter of law, as well as an evidentiary decision made by the district court at trial. For the following reasons, we affirm.

I.

A.

At about 9:15 pm on the evening of August 2, 2013, Moskos, an inmate at the Lumberton Correctional Institute in North Carolina, approached Officer James Hardee and asked whether he could cross to a different wing of the prison to get cold water from a water fountain there. Hardee denied this request because, he later testified, it would have violated protocol for an inmate to move across the prison yard once the dormitories had been secured for the evening. Shortly thereafter, Moskos came across Officer Katherine Butler, who allowed him to fill a nearby cooler with water. The cooler was located in an area adjacent to Moskos's wing, and therefore did not require him to cross the prison yard. *See* J.A. 805.

2

As Moskos returned with the cooler full of cold water, he encountered Hardee again. The details of what happened next are hotly disputed. According to Butler and Hardee, Moskos began cursing at Hardee, and Hardee asked Moskos for his ID card, which he was required to carry with him at all times. Moskos did not have his card with him and walked away as if to retrieve it from his locker, but then abruptly turned around, repeatedly punched Hardee in the face, and jumped on top of him. Butler radioed for assistance and Officer James Horne testified that he ran to the scene, ordered Moskos to stop the assault, and used pepper spray twice when Moskos refused. Moskos continued to assault both officers until Horne was able to subdue him.

Moskos testified to a very different series of events. According to Moskos, he had threatened to file a grievance against Hardee during their earlier conversation, which had angered Hardee. When Moskos stated that he did not have his ID card with him, Hardee became enraged. Moskos testified that when he set off to retrieve the card, Hardee struck him without warning in the back of the head, and then pretended to fall to the ground, while punching and grabbing at Moskos's legs. Moskos stepped away from Hardee, retrieved his ID card from his locker, and returned. At this point Horne, upon seeing Hardee on the ground, allegedly sprayed Moskos in the face with a can of pepper spray, hit him in the head with the can, and put him in a choke hold. Moskos also alleges that an unknown third officer joined in the assault and injured Moskos's shoulder while handcuffing him.

Following the altercation, the officers brought Moskos to the prison's segregation unit, where he was assessed by Nurse Charletta Scott. Moskos complained that his eyes were burning, and according to Rose Locklear, a captain at the prison, he was given a

3

shower shortly thereafter, within about 30 to 45 minutes of the incident. Scott testified that Moskos was then subject to a full medical assessment, following which he was transferred to the Southeastern Regional Medical Center. Moskos disputes the timing of this: in his account, Scott ordered that he be decontaminated of the pepper spray immediately but the officers instead returned Moskos to his cell. As a result, Moskos claims that he was only decontaminated *after* the full medical examination, approximately 90 to 120 minutes after the pepper spray had been used against him.

When Moskos returned from the hospital, he was placed in a segregation unit. Moskos alleges that the unit was very cold and dark, that it lacked toilet paper, running water, and soap, that he was not provided with a mattress or any bedding, and that he was not allowed to shower or shave for the approximately 20 days during which he was placed in the unit.

The prison conducted an investigation into the August 2nd incident. Shortly thereafter, Moskos was charged with, and found guilty of, three prison disciplinary infractions: assault on an officer, profane language, and disobeying an order. He lost 15 earned good-credit days, was sentenced to 60 days in disciplinary segregation, and was transferred to a maximum-level security facility, Maury Correctional Institute.

Shortly thereafter, Moskos submitted a grievance with the prison, contending that Horne had struck him over the head with a can of pepper spray and that he had been "punished wrongfully" because the officers had "lie[d] in their reports." The grievance was dismissed on a recommendation by Assistant Superintendent James McRae, who concluded that Moskos had not been hit with the can.

B.

Moskos filed suit under 42 U.S.C. § 1983 against several correctional officers, including Hardee, Butler, and Horne, alleging Eighth Amendment, due process, and ADA claims. The district court granted summary judgment to the defendants on Moskos's ADA claims but denied the motion as to the remaining claims, which proceeded to a jury trial. Moskos's claims before the jury included allegations of excessive force in the initial altercation, as well as assault and battery; deliberate indifference as to the alleged delay in decontaminating him; wrongful confinement of him in the segregation unit; and due process violations relating to his disciplinary investigation.

On the second day of trial, Moskos called McRae as a witness and asked him to confirm that a particular exhibit contained documents related to the grievance that Moskos had filed. The district court asked Moskos's counsel to explain the purpose behind this line of questioning, and then stated that it was "completely irrelevant." J.A. 931. Without referencing the exhibit specifically, counsel asked McRae some further questions about his review of the grievance, and then concluded the examination.

At the close of Moskos's case at trial, the defendants moved for judgment as a matter of law under Rule 50(a). The court granted this motion as to the due process and deliberate indifference claims and the jury returned a verdict for the defendants on the remaining excessive force and assault and battery claims.

The court set forth its Rule 50(a) ruling in a written order. With respect to Moskos's due process claim, the court concluded that there was no evidence indicating that Moskos had been denied written notice or the opportunity to call witnesses. *See* J.A. 994–95. As to

5

Moskos's claim of deliberate indifference stemming from the alleged failure to decontaminate him following the use of pepper spray, the court concluded that this claim was not supported by the record, as there was "no evidence that any defendant intentionally delayed [Moskos's] access to decontamination." J.A. 993–94. Finally, the court held that Moskos's claim of deliberate indifference to unconstitutional prison conditions failed since the alleged conditions did not constitute an "extreme deprivation" that could qualify as an Eighth Amendment violation and since Moskos had not produced evidence indicating that the defendants were aware of the alleged conditions anyway. *See* J.A. 991–93 (quoting *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013)).

On appeal, Moskos contends primarily that the district court erred in granting judgment as a matter of law on his due process and deliberate indifference claims. In addition, he also argues that the district court erred by preventing counsel from examining McRae on the subject of Moskos's grievance.

A court may grant judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). We review such judgments de novo. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404–05 (4th Cir. 1999).

II.

We begin with Moskos's due process claim. This claim boils down to an argument that prison officials fabricated evidence so that Moskos would be wrongfully convicted of

prison disciplinary infractions, causing him to lose good-time credits. But controlling precedent from the Supreme Court clearly precludes prisoners from bringing this sort of a challenge under § 1983 unless the disciplinary conviction has been invalidated, which is not the case here. It follows that there was no "legally sufficient evidentiary basis" to find for Moskos on this issue, and that judgment as a matter of law was proper. Fed. R. Civ. Pro. 50(a)(1). In addition, since Moskos's due process claim fails as a matter of law, we reject his evidentiary challenge, as the testimony that Moskos sought to elicit from McRae could only conceivably have been relevant to that claim.

A.

Moskos alleges that the defendants violated his substantive and procedural due process rights by conducting a sham investigation, following which he was convicted of several disciplinary infractions and lost good-time credits. Moskos brought his suit under 42 U.S.C. § 1983, which provides a cause of action for individuals seeking damages for constitutional violations. But § 1983 does not provide a cause of action in the circumstances present here.

The Supreme Court has long held that "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement" and that this "specific determination must override the general terms of § 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). "It would wholly frustrate explicit congressional intent" if petitioners could avoid the requirements for habeas relief "by the simple expedient of putting a different label on their pleadings." *Id.* at 489–90. This principle applies just as clearly to prison disciplinary convictions resulting in the loss of good-time credits as it does

7

to other convictions, since the restoration of good-time credits is "within the core of habeas corpus in attacking the very duration of [the prisoner's] physical confinement itself." *Id.* at 487–88.

It has long been settled law, therefore, that a plaintiff may not challenge the validity of a disciplinary conviction through a damages suit under § 1983. In particular, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated," whether on direct appeal, by executive order, by a state tribunal, or by a federal court's issuance of a writ of habeas corpus. *Id.*

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that this rule applies not merely to substantive challenges to convictions, but also to those challenges to internal prison procedures that would be "such as necessarily to imply the invalidity of the judgment." *Id.* at 645. The prisoner there alleged that a hearing officer "concealed exculpatory witness statements and refused to ask specified questions of requested witnesses." *Id.* at 644. As a result, he alleged that he was deprived of the chance to present exculpatory evidence and wrongfully deprived of good-time credits. *See id.* at 646–47. The Court held that this sort of damages claim, "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed," was not cognizable under § 1983. *Id.* at 648. And *Balisok* was emphatic as to how the courts should handle such claims: "[A] claim is either cognizable under § 1983

8

and should immediately go forward, or is not cognizable and should be dismissed." *Id.* at 649.

Here, as in *Balisok*, Moskos brings a due process challenge to the disciplinary investigation conducted against him, which resulted in the loss of good-time credits. Here, as in *Balisok*, Moskos has not invalidated his disciplinary convictions. And here, for virtually identical reasons as in *Balisok*, Moskos's due process challenge would "necessarily imply the invalidity of the punishment imposed." *Id.*

After all, the gravamen of Moskos's due process argument is that the defendants falsified information, because of which "Moskos was ultimately found guilty of three prison disciplinary offenses that he did not commit," causing him to lose good-time credits. Appellant's Br. at 29. This is practically identical to *Balisok*, where the prisoner alleged "deceit and bias on the part of decisionmaker" that prevented him from presenting exculpatory evidence and led to his wrongful conviction. 520 U.S. at 644. Here too, a conclusion that prison staff fabricated evidence to cover up their involvement clearly would imply that Moskos's disciplinary convictions were invalid. Indeed, Moskos states repeatedly that he was wrongfully convicted "based solely" on the due process violations he alleges. *See* Appellant's Br. at 2, 29. Because his claims would necessarily imply the invalidity of the judgment, they must be dismissed under *Balisok*.

If Moskos believes that he has been wrongfully convicted of these disciplinary infractions, he is of course free to seek legal recourse. But if he seeks to do so in federal court, he must use the channel that Congress has provided for such claims. That path is through a habeas petition, subject to those statutory requirements that Congress carefully

crafted to respect the finality of state judgments. In law, unlike in history, not all roads lead to Rome. Since Moskos did not take a proper road, we affirm the district court as to his due process claim.

## B.

Since we hold that Moskos's due process claim fails as a matter of law, we also reject his contention that the district court erred by preventing his counsel from examining McRae on the subject of Moskos's grievance. We review such evidentiary decisions for abuse of discretion and we "will only overturn an evidentiary ruling that is arbitrary and irrational." *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011)). Here the district court cut short Moskos's line of questioning on the grounds that any testimony as to the grievance would be "completely irrelevant" to the case. J.A. 931. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

On appeal, Moskos states that further testimony from McRae would have allowed him to "develop the record regarding the prison grievance process, its relationship to the [prison's] investigation and Mr. Moskos's disciplinary charges, and, thus, its relevance to Mr. Moskos's harm and Defendants' liability therefor." Appellant's Br. at 50. But even assuming *arguendo* that McRae's testimony could have been relevant in this respect, any error would be harmless since the disciplinary investigation pertains only to Moskos's due process claim, and that claim fails as a matter of law. *See Wickersham v. Ford Motor Co.*, 997 F.3d 526, 531 (4th Cir. 2021) ("Any abuse of discretion is reviewed for harmless error,

10

and a new trial is required only when the admission of evidence affected the substantial rights of a party.").

Moskos, however, argues that the excluded testimony would *also* have been relevant to his excessive force and assault and battery claims because his claims are "all inextricably tied together" and because testimony on the grievance might indicate that the officers falsified their account of the assault. Appellant's Br. at 52. This supposed connection is doubtful in light of the total lack of evidence that McRae even communicated with Hardee and Horne. At the very least, the trial court can scarcely be said to have abused its discretion in rejecting a purely speculative and wide-roaming foray into the grievance process. Trial courts have "broad discretion to control the mode of interrogation and presentation of evidence" so that "witnesses are treated fairly and the search for truth is not impaired by presentation of extraneous, prejudicial or confusing material." *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988). The court here was well justified in concluding that a trial-within-a-trial of the prison grievance system would have only produced more heat than light.

As a final note, Moskos can hardly contend that he was deprived of a fair trial. He testified at length to his account of what had happened, and the defendants did the same, largely uninterrupted by the district court. The jurors, in short, were presented with a classic contest of credibility between plaintiff and defendant, a contest which they resolved by finding for the defendants. This is precisely the sort of question we delegate to juries, and we see no basis for disturbing the verdict.

## III.

Next, we turn to Moskos's Eighth Amendment deliberate indifference claims. To prevail on these claims, Moskos must establish two things. First, he must prove an objective element: a "deprivation of a basic human need" that is "sufficiently serious." *De'lonta*, 708 F.3d at 525 (quoting *De'Lonta v. Angelona*, 330 F.3d 630, 634 (4th Cir. 2003)). And second, he must prove a subjective element: "that the officials acted with a sufficiently culpable state of mind." *Id.* (quoting *De'Lonta*, 330 F.3d at 634).

Moskos contends that the district court incorrectly granted judgment as a matter of law on two distinct Eighth Amendment claims. He alleges that the prison officials were deliberately indifferent to his serious medical needs because they delayed decontaminating him after he was sprayed with pepper spray. And he alleges that they were deliberately indifferent to unconstitutional conditions of confinement when he was placed in the segregation unit following his return from the hospital. We address each in turn.

### A.

First, Moskos contends that the defendants violated the Eighth Amendment by failing to decontaminate him in a timely manner after his exposure to pepper spray. At trial, Moskos and the prison staff gave different accounts as to the time it took for Moskos to be decontaminated. According to Moskos's testimony, 90 to 120 minutes elapsed between the use of the pepper spray and his decontamination. The prison officials testified by contrast that only 45 to 50 minutes elapsed. Even under Moskos's account, however, there was no Eighth Amendment violation, because the objective prong is not satisfied.

12

As the Supreme Court has made clear, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Rather, "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Not all medical delays, of course, will meet this standard. Medical care is often not immediate. Only the most fortunate are able to receive a doctor's appointment at the precise time they want it or medical attention at the very moment of arrival at a hospital. Waiting is often the name of the game. And actual treatment may not follow immediately upon medical attention, whether due to the caution of a prudent physician or the inevitable uncertainties of diagnosis. It would be wrong to turn the everyday inconveniences and frictions associated with seeking medical care into constitutional violations whenever they occur within the prison walls.

Mere delay is therefore not enough. Rather, "[t]he objective prong requires [Moskos] to show that the alleged delay . . . put him at a 'substantial risk' of 'serious harm.'" *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at "substantial risk of serious harm," such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature.

Such conditions are plainly not met here. Moskos experienced the usual transitory effects of pepper spray for a period of, at most, 90 to 120 minutes. He did not testify to any

13

serious medical reaction or to any pain beyond the normal discomfort of pepper spray: even by his own account, he simply expressed that his eyes were burning, not that he was experiencing more serious medical issues. *See* J.A. 751. In circumstances such as these, involving a short delay in decontamination, without any aggravating factors such as a serious medical reaction, courts have consistently found that the objective prong is not satisfied. *See, e.g.*, *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014); *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 767 (11th Cir. 2014); *Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007). And the facts here do not remotely resemble cases where we have found the objective prong to be met, as with an inmate who collapsed and subsequently died after the use of pepper spray, *see Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), or an inmate who was denied medical attention for several days while vomiting blood, *see Scinto*, 841 F.3d at 231–32. We therefore conclude that the district court properly granted judgment as a matter of law on this claim.

B.

Second, Moskos contends that the defendants violated the Eighth Amendment through deliberate indifference to the inhumane conditions that he alleged when confined to the segregation unit following his return from the hospital. But this claim also faces a threshold difficulty, for Moskos failed to establish that the subjective prong of the Eighth Amendment was satisfied. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be

14

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Yet Moskos did not produce any evidence at trial indicating that any of the defendants were responsible or aware of the alleged conditions that he experienced. Moskos never testified that any of these particular officers oversaw his custody in the segregation unit, nor that he complained to them about the conditions of his confinement. He merely asserts as a conclusory matter that the defendants placed him in solitary confinement as "further punishment for speaking out [about] what happened." J.A. 753. But there is not even circumstantial evidence indicating that the defendants were responsible for those conditions or could alleviate them. Moskos's conclusory assertion, entirely unsupported by other evidence, could hardly create a "legally sufficient evidentiary basis" for the jury to conclude that the specific defendants were deliberately indifferent to the conditions of Moskos's confinement.

"If a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). Since the only basis on which Moskos could satisfy the subjective prong is through precisely this sort of "speculation and conjecture," the district court properly granted judgment on this claim as well.

IV.

The district court gave Moskos every opportunity to prove his claims at trial. But Moskos failed to make a legally cognizable due process claim or to provide any evidence that could establish a deliberate indifference claim under the Eighth Amendment. And on his remaining excessive force and assault and battery claims, the jury heard the complete testimony of both plaintiff and defendants and found the defendants more credible. We therefore affirm the judgment.

*AFFIRMED*