**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OPHELIA AZRIEL DE'LONTA,

           *Plaintiff-Appellant,*

         v.

GENE JOHNSON, Director of VDOC;
FRED SCHILLING, Director of Health
Services for VDOC; MEREDITH R.
CAREY, Chief Psychiatrist for
VDOC; GARY L. BASS, Chief of
Operations, VDOC; W. P. ROGERS,
Assistant Deputy Director of
Operations, VDOC; GERALD K.
WASHINGTON, Regional Director,
Central Regional Office for the
VDOC; EDDIE PEARSON, Warden of
Powhatan Correctional Center,
VDOC; ANTHONY SCOTT, Chief of
Security at Powhatan Correctional
Center; ROBERT L. HULBERT, PhD.,
Mental Health Director for the
VDOC; LARRY EDMONDS, Warden,
Buckingham Correctional Center,
VDOC; MAJOR C. DAVIS, Chief of
Security of Buckingham
Correctional Center;

No. 11-7482

LISA LANG, Staff Psychologist;
TONEY, Counselor at Buckingham
Correctional Center; LOU DIXON,
Registered Nurse Manager,
Buckingham Correctional Center,

*Defendants-Appellees.*

DC TRANS COALITION; AMERICAN
CIVIL LIBERTIES UNION; AMERICAN
CIVIL LIBERTIES UNION OF VIRGINIA,
INCORPORATED,

*Amici Supporting Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(7:11-cv-00257-JCT-RSB)

Argued: October 24, 2012

Decided: January 28, 2013

Before MOTZ, KING, and DIAZ, Circuit Judges.

Reversed and remanded by published opinion. Judge Diaz
wrote the opinion, in which Judge Motz and Judge King
joined.

**COUNSEL**

**ARGUED:** Bernadette Francoise Armand, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant. Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Victor M. Glasberg, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant. Kenneth T. Cuccinelli, II, Attorney General of Virginia, Michael H. Brady, Assistant Attorney General, Charles E. James, Jr., Chief Deputy Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Jeffrey Light, LAW OFFICE OF JEFFREY LIGHT, Washington, D.C., for DC Trans Coalition, Amicus Supporting Appellant. Joshua Block, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York; Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA FOUNDATION, INC., Richmond, Virginia, for American Civil Liberties Union Inc., and American Civil Liberties Union of Virginia, Inc., Amici Supporting Appellant.

---

**OPINION**

DIAZ, Circuit Judge:

Virginia inmate Ophelia Azriel De'lonta (born Michael A. Stokes) filed suit under 42 U.S.C. § 1983 claiming that prison officials denied her adequate medical treatment in violation of the Eighth Amendment. The district court dismissed the complaint for failure to state a claim. Because we conclude that De'lonta's complaint states a claim for relief that is plausible on its face, we reverse and remand for further proceedings.

I.

On appeal from a dismissal for failure to state a claim upon which relief can be granted, we accept as true all the factual

allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997).

A.

De'lonta has been in the custody of the Virginia Department of Corrections ("VDOC") since 1983, serving a 73-year sentence for bank robbery. She is a pre-operative transsexual suffering from a diagnosed and severe form of a rare, medically recognized illness known as gender identity disorder ("GID"). GID is characterized by a feeling of being trapped in a body of the wrong gender. This belief has caused De'lonta to suffer "constant mental anguish" and, on several occasions, has caused her to attempt to castrate herself in efforts to "perform[ ] [her] own makeshift sex reassignment surgery." App. 14, 46, 48. De'lonta has described these ongoing urges to perform self-surgery as "overwhelming." App. 31.

In 1999, De'lonta filed a § 1983 lawsuit alleging that VDOC had instituted a policy that wrongfully prevented her from receiving GID treatment in violation of the Eighth Amendment. As in the instant case, the district court dismissed De'lonta's 1999 complaint for failure to state a claim. We reversed and remanded, holding that De'lonta's need for protection against continued self-mutilation constituted an objectively serious medical need under the Eighth Amendment and that De'lonta had sufficiently alleged VDOC's deliberate indifference to that need. *De'lonta v. Angelone* ("*De'lonta I*"), 330 F.3d 630, 634 (4th Cir. 2003). The parties subsequently reached a settlement in which VDOC acknowledged De'lonta's serious medical need and agreed to provide continuing treatment.

Since that settlement, VDOC, in consultation with an outside Gender Identity Specialist, has provided De'lonta with GID treatment consisting of regular psychological counseling

and hormone therapy. De'lonta has also been allowed to dress and live as a woman to the full extent permitted by VDOC. Despite these treatments, which have continued since 2004, De'lonta's symptoms have persisted. In a series of formal grievances and letters, De'lonta notified prison officials of her "extreme distress" with her treatment team. She complained that although her treatment program had produced "growth and stability[,]" she was still feeling strong, "imminent" urges to self-castrate. In July 2010, De'lonta was hospitalized following a self-castration attempt.

In a September 2010 letter, De'lonta asserted that her urges to self-castrate are particularly overwhelming immediately following her therapy sessions with VDOC Psychologist Lisa Lang. J.A. 31. De'lonta asked to stop seeing Lang, and repeatedly requested sex reassignment surgery pursuant to the GID treatment guidelines established by the "Benjamin Standards of Care" ("Standards of Care").

The Standards of Care, published by the World Professional Association for Transgender Health,[1] are the generally accepted protocols for the treatment of GID. They establish a "triadic treatment sequence" comprised of (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and (3) sex reassignment surgery. App. 15. The Standards of Care explain that although the first two treatment options provide sufficient relief for some patients, others with more severe GID may require sex reassignment surgery. Pursuant to the Standards of Care, after at least one year of hormone therapy and living in the patient's identified gender role, sex reassignment surgery may be necessary for some individuals for whom serious symptoms persist. App. 16. In these cases, the surgery is not considered experimental or cos-

---

[1]Formerly known as the Harry Benjamin International Gender Dysphoria Association, which is the name to which De'lonta referred in her complaint.

metic; it is an accepted, effective, medically indicated treatment for GID.

Responding to De'lonta's letters and grievances, VDOC's Chief Psychiatrist, Dr. Meredith Cary, replied that "in regards to gender reassignment surgery, I would request that you continue to work with Ms. Lang in individual therapy at this time." App. 37. Although VDOC consults with an outside Gender Identity Specialist regarding De'lonta's care, she has never been evaluated by a GID specialist concerning her need for sex reassignment surgery.

## B.

In 2011, De'lonta filed suit against Gene Johnson, the former director of VDOC, as well as numerous VDOC administrators and members of her care team (collectively, "Appellees"). De'lonta's complaint alleges that, in light of their knowledge of her ongoing risk of self-mutilation, Appellees' continued denial of consideration for sex reassignment surgery constitutes deliberate indifference to her serious medical need in violation of the Eighth Amendment. On screening pursuant to 28 U.S.C. § 1915A(b)(1), the district court dismissed the complaint without prejudice for failure to state a claim upon which relief could be granted.[2] *De'lonta v. Johnson* ("*De'lonta II*"), No. 7:11-CV-00257, 2011 WL 5157262 (W.D. Va. Oct. 28, 2011).

The district court held that De'lonta failed to allege deliberate indifference on the part of Appellees sufficient to state an Eighth Amendment claim. The court explained that

---

[2]Although a dismissal without prejudice is not normally appealable, because the grounds provided by the district court for dismissal "clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case," we conclude that the order dismissing De'lonta's complaint is an appealable final order. *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993) (alteration & internal quotation omitted).

De'lonta's own allegations contradict the conclusion that Appellees are "persistently denying her treatment," since De'lonta acknowledges that VDOC has provided mental health consultations, hormone therapy, and cross-dressing allowances in accordance with the Standards of Care. *De'lonta II*, 2011 WL 5157262, at \*5. "The only treatment described by the Standards of Care that she has not yet received," the court observed, "is the sex reassignment surgery." *Id.* But because De'lonta has not been approved for that surgery, the district court determined that she is "not entitled to" it. *Id.* In the view of the district court, Appellees are permissibly denying De'lonta "only her preferred therapy of surgery." *Id.* at \*5-6. Since De'lonta has not presented "a situation where there is a total failure to give medical attention or a policy prohibiting her treatment for GID," the court held that "her current dissatisfaction with the progress or choice of treatment" is insufficient to support an Eighth Amendment claim. *Id.* at \*6.

De'lonta appeals, arguing that the district court erred in dismissing her Eighth Amendment claim.[3]

## II.

The sole issue before us is whether De'lonta's complaint states a plausible Eighth Amendment claim. We review de novo a district court's dismissal under 28 U.S.C. § 1915A for failure to state a claim, applying the same standards as those for reviewing a dismissal under Fed. R. Civ. P. 12(b)(6). *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005); *cf. De'lonta I*, 330 F.3d at 633. To survive a motion to dismiss under that rule, a complaint must contain "suffi-

---

[3]The district court also dismissed without prejudice an Equal Protection claim and a separate Eighth Amendment claim asserting that Nurse Lou Dixon improperly denied De'lonta's hormone treatment on one occasion. Because De'lonta does not press these claims on appeal, we do not address them here.

cient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the complaint's plausibility, we accept as true all the factual allegations contained therein. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327 (2012). Additionally, we afford liberal construction to the allegations in pro se complaints raising civil rights issues. *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010).

A.

De'lonta contends she has stated a valid constitutional claim because the Appellees' "denial of consideration for sex reassignment surgery, when viewed against the backdrop of her medical history and circumstances, constitutes a deliberate indifference to her serious medical needs in violation of the Eighth Amendment." Appellant's Br. at 13.

Appellees counter that De'lonta's complaint fails to satisfy *Twombly*'s plausibility requirement. While conceding that De'lonta's need for protection from self-mutilation is a serious medical need, Appellees assert that because De'lonta has never been prescribed sex reassignment surgery, she cannot allege that sex reassignment surgery is a serious medical need for the purposes of the Eighth Amendment. Because De'lonta has no constitutional right to her *preferred* form of treatment, Appellees suggest that their refusal to provide her sex reassignment surgery is a matter of discretion that carries no constitutional implications.

Next, Appellees charge that "[b]y alleging that defendants have actively participated in providing treatment directed to [De'lonta's] urges to self-mutilate, [De'lonta] has necessarily failed to state a plausible claim that defendants were deliberately indifferent to that risk." Appellees' Br. at 18. In other

words, Appellees contend that because they have provided *some* treatment recognized as effective under the Standards of Care, their conduct cannot be said to rise to the level of deliberate indifference.

Finally, Appellees argue that since De'lonta's GID treatment is governed by the settlement agreement that arose from her 1999 lawsuit, she "cannot establish that [Appellees'] acts or omissions with regard to that treatment rise to the level of a constitutional violation." *Id.* at 21.

B.

As we explained in *De'lonta I*, "[i]n order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that the deprivation of [a] basic human need was *objectively* sufficiently serious, and (2) that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." 330 F.3d at 634 (internal quotations omitted) (alterations in original). Only an extreme deprivation, that is, a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement. *Id.* The subjective component of such a claim is satisfied by a showing of deliberate indifference by prison officials. This "entails something more than mere negligence" but does not require actual purposive intent. *Id.* "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

C.

Applying this two-prong Eighth Amendment standard, we first resolve that De'lonta has alleged an objectively serious medical need for protection against continued self-mutilation. Indeed, we previously held as much in *De'lonta I. Id.* at 634

("[P]rison officials have a duty to protect prisoners from self-destruction or self-injury." (quoting *Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981)). In any case, Appellees concede this point. Appellees' Br. at 15.

Next, we conclude that De'lonta's complaint sufficiently alleges Appellees' deliberate indifference to her serious medical need, and consequently, that the district court's dismissal was in error.

There is no dispute that Appellees have, at all relevant times, been aware of De'lonta's GID and its debilitating effects on her. Indeed, since the settlement of De'lonta's earlier lawsuit, Appellees have provided De'lonta with hormone treatment, mental health consultations, and have allowed her to live and dress as a woman. It is also true, as Appellees and the district court note, that these treatment options do accord with the first two stages of the triadic protocol established by the Standards of Care. However, the Standards of Care also indicate that sex reassignment surgery may be necessary for individuals who continue to present with severe GID after one year of hormone therapy and dressing as a woman. App. 16-17.

De'lonta alleges that, despite her repeated complaints to Appellees alerting them to the persistence of her symptoms and the inefficacy of her existing treatment, she has never been evaluated concerning her suitability for surgery. Instead, despite their knowledge that De'lonta's therapy sessions with Psychologist Lang actually *provoked* her "overwhelming" urges to self-castrate, VDOC's medical staff's only response to De'lonta's requests for surgery was a "request that you continue to work with Ms. Lang in individual therapy at this time." These factual allegations, taken as true, state a plausible claim that Appellees "actually kn[e]w of and disregard[ed]" De'lonta's serious medical need in contravention of the Eighth Amendment. *De'lonta I*, 330 F.3d at 634 (quoting *Farmer*, 511 U.S. at 837).

We reject Appellees' conclusion—one shared by the district court—that "[b]y alleging that [Appellees] have actively participated in providing treatment directed to [De'lonta's] urges to self-mutilate, [De'lonta] has necessarily failed to state a plausible claim that [Appellees] were deliberately indifferent to that risk." Appellees' Br. at 18; *see De'lonta II*, 2011 WL 5157262, at \*5. We do, of course, acknowledge that Appellees have provided De'lonta with some measure of treatment to alleviate her GID symptoms. But just because Appellees have provided De'lonta with *some* treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment. *See De'lonta I*, 330 F.3d at 635-36; *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[A] total deprivation of care is not a necessary condition for finding a constitutional violation: Grossly incompetent or inadequate care can [also] constitute deliberate indifference . . . ." (internal quotation omitted) (second alteration in original)).

By analogy, imagine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not. Accordingly, although Appellees and the district court are correct that a prisoner does not enjoy a constitutional right to the treatment of his or her choice,[4] the treat-

---

[4]We have explained that in this context the "essential test is one of medical necessity and not simply that which may be considered desirable," *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). In this vein, Appellees and the district court take pains to point out that, absent a doctor's recommendation, De'lonta cannot show a demonstrable need for sex reassignment surgery. However, we struggle to discern how De'lonta could have possibly satisfied that condition when, as she alleges, Appellees have never allowed her to be evaluated by a GID specialist in the first place.

ment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need.

Likewise, we find no merit to Appellees' argument that De'lonta's previous settlement with VDOC "logically operates to refute subsequent Eighth Amendment claims because the settlement repels any plausible claim of willful indifference to the condition." Appellees' Br. at 22. The mere fact that VDOC has previously acknowledged De'lonta's condition and agreed to provide treatment in no way forecloses the possibility that its performance under that agreement later became constitutionally deficient. *See Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) (stating that "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs.").

We wish to be clear about our holding. We hold only that De'lonta's Eighth Amendment claim is sufficiently plausible to survive screening pursuant to 28 U.S.C. § 1915A. We do not decide today the merits of De'lonta's claim. Nor, for that matter, do we mean to suggest what remedy De'lonta would be entitled to should she prevail. In our view, the answers to those questions have no bearing on whether De'lonta has stated a claim that Appellees have been deliberately indifferent to her serious medical need by refusing to evaluate her for surgery, consistent with the Standards of Care.

III.

For the reasons set forth above, we reverse the district court's dismissal of De'lonta's Eighth Amendment claim and remand the case for further proceedings.

*REVERSED AND REMANDED*