**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-6867

THEODORE JERRY BOLICK,

Plaintiff - Appellant,

v.

JOEL ANDERSON, in his official capacity; BRYAN P. STIRLING; TERRIE WALLACE; LIEUTENANT SUMTER; LIEUTENANT WRIGHT; LIEUTENANT ROBB; GREGORY FURNESS; KIRKLAND MEDICAL STAFF; OLUWAKEMI BABATUNDE; CATHY GRIMES; JOYALYN ESKEW,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina at Orangeburg. Robert Bryan Harwell, Senior District Judge.  (5:21-cv-03800-RBH)

Argued:  September 9, 2025                          Decided:  March 13, 2026

Before KING and BERNER, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Berner wrote the opinion, which Judge King and Judge Floyd joined.

**ARGUED:**  Zoe Terner, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  Brian Craig Mauldin, DAVIDSON & WREN, P.A., Columbia, South Carolina, for Appellees.  **ON BRIEF:**  Richard B. Katskee, Michael DeLuca, Gabriela Nagle Alverio, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  William H. Davidson, II, DAVIDSON & WREN, P.A., Columbia,

South Carolina, for Appellees.

_____

2

BERNER, Circuit Judge:

Theodore Jerry Bolick was incarcerated at the Kirkland Correctional Institution Reception and Evaluation Center on two separate occasions, each lasting approximately five months. During both periods of incarceration, Bolick was not permitted to leave his cell to engage in physical exercise, despite suffering from serious physical disabilities that required exercise for rehabilitation. Following his transfer from Kirkland, Bolick filed this *pro se* civil rights action against several Kirkland officials as well as the Director of the South Carolina Department of Corrections. Bolick alleges, among other claims, that the two extended periods of deprivation of out-of-cell exercise violated his Eighth Amendment right to humane conditions of confinement. The Eighth Amendment obligates prison officials to ensure that incarcerated individuals receive the basic necessities of living. These necessities include not only food and shelter, but also the ability to engage in out-of-cell exercise unless penological considerations leave prison officials with no alternative.

After the close of discovery, the defendants filed a motion for summary judgment which the district court granted. Upon review of the record evidence, we conclude that genuine issues of material fact preclude summary judgment on Bolick's inhumane conditions of confinement claim against the Kirkland officials. We agree with the district court, however, that Bolick failed to meet his evidentiary burden to show that the Director of the South Carolina Department of Corrections could be found liable for this alleged violation. Accordingly, we affirm in part and vacate in part the district court order and remand for further proceedings.

3

## I.  Background

Theodore Jerry Bolick was convicted of second-degree burglary in South Carolina state court and sentenced to twelve years' incarceration. All men newly incarcerated in the South Carolina Department of Corrections (SCDC) system are first sent to the Kirkland Correctional Institution for "reception and evaluation." The reception and evaluation process generally lasts between two to three months, during which time the newly-incarcerated men are assessed to determine their individual safety risk level and their appropriate permanent place of incarceration. An individual's safety risk level is based, at least in part, on the nature of the crime for which the individual was incarcerated and whether the individual had previously been affiliated with a gang.

SCDC policy requires men incarcerated at Kirkland for reception and evaluation to remain confined in their cells nearly all the time. They are permitted to leave their cells only to attend medical appointments, to shower, and to use the telephone. They are never permitted to leave their cells to engage in physical exercise, purportedly because it would be unsafe to allow incarcerated individuals to intermingle before they have been individually evaluated to determine their safety risk and classified accordingly. In lieu of out-of-cell exercise, men undergoing reception and evaluation at Kirkland are provided a two-page pamphlet describing the SCDC in-cell exercise policy. The pamphlet includes instructions for physical exercises—such as sit-ups and knee-bends—that can generally be performed within the confines of a prison cell.

Bolick was first held at Kirkland for reception and evaluation from September 17, 2020, to February 11, 2021. Pursuant to SCDC policies, Bolick was permitted to leave his

4

cell only for medical appointments, to shower, and to make telephone calls. He was not allowed out of his cell to exercise. Warden Terrie Wallace was responsible for enforcing SCDC policies at Kirkland. Lieutenants Elaine Sumter, Twonda Wright, and Catherine Robb directly oversaw Bolick's dormitory and enforced the policies there.

Prior to his incarceration, Bolick suffered a number of serious physical injuries, including broken bones in his legs and feet. Surgeries aimed at repairing these injuries left Bolick with metal rods in his right femur and fibula, and pins and plates in both feet. The injuries also severely limited Bolick's ability to engage in physical activity. He could neither run nor walk unassisted, though he was able to walk with the assistance of a walker or a cane. These physical limitations prevented Bolick from being able to perform the exercises described in the in-cell exercise pamphlet. His cell was not large enough to allow him to move about freely. The cell had less than 25 square feet of unencumbered space and held two men and three steel beds.

Without the ability to exercise for an extended period of time, Bolick's preexisting ailments worsened and his physical and mental health deteriorated. His muscles atrophied. He suffered from bedsores, skin rashes, lethargy, fatigue, decreased stamina, shortness of breath, chest pains, stiff joints, and severe pain. He experienced increased anxiety, depression, and suicidal ideation. Four months into his first period of incarceration at Kirkland, two prison doctors diagnosed Bolick with arthritis, major depressive disorder, and an unspecified personality disorder. A prison doctor also directed prison officials to assign Bolick to a bottom bunk due to his ailments.

5

Bolick did not suffer in silence, however. Taking advantage of Kirkland's policy for prisoner requests and grievances, Bolick asked—at least eight times—to be permitted to leave his cell so he could exercise. Bolick explained that he was unable to exercise inside his cell. He complained that his cell was too small and crowded to allow him to move about, and that the inability to engage in physical exercise was causing him significant physical and emotional harm. Bolick's repeated requests went unheeded. Instead of permitting him to leave his cell to exercise, officials over and over directed him to the in-cell exercise pamphlet. After nearly five months, Bolick was finally classified and transferred from Kirkland to his permanent place of incarceration

Approximately two months after he was transferred, a South Carolina state trial court vacated Bolick's sentence based on a mistrial. The South Carolina state trial court ordered Bolick released from SCDC custody and he was transferred temporarily to a pretrial detention center while the state trial court considered the State's motion for reconsideration. The State's motion for reconsideration was granted and Bolick's convictions were reinstated. He was once again sent to Kirkland for reception and evaluation.

Bolick's second period of reception and evaluation at Kirkland lasted even longer than the first. This time, he spent over five months—between June 15 and December 9, 2021—confined to his cell nearly all the time. Lieutenant Wright oversaw Bolick's dormitory and was responsible for enforcing SCDC policies. Although this cell had only two beds, three men shared the cell. Because Bolick was the last to arrive, he was forced to sleep on a mat on the floor. Less than eighteen inches separated the mat from the cell

6

toilet. Both of Bolick's cellmates attested that the cell was so small they were unable to move around freely and in-cell exercise was impossible.

As before, Bolick filed requests—this time, at least twenty-two—seeking permission to leave his cell to exercise. In these requests, Bolick described the harm he suffered as a result of being unable to exercise for an extended period of time. Bolick's requests were not granted. Instead, the prison officials once again directed Bolick to do the exercises contained in the in-cell exercise pamphlet or merely forwarded the request to other officials within the prison system.

All told, over two periods of incarceration, Bolick spent 324 days, over ten months, at Kirkland. He was not permitted to leave his cell to engage in physical exercise during this entire time.

## II. Procedural History

Proceeding *pro se*, Bolick filed suit under 42 U.S.C. § 1983 against, among others, SCDC Director Bryan Stirling (Director Stirling), Kirkland Warden Terrie Wallace (Warden Wallace), and Lieutenants Elaine Sumter, Twonda Wright, and Catherine Robb (we will refer to Warden Wallace and the Lieutenants collectively as "the Officials"). Section 1983 enables suit against state or local government officials, and others acting under color of state law, for constitutional violations. Bolick alleges that the Officials violated his Eighth Amendment right to humane conditions of confinement by: 1) depriving him of the ability to engage in out-of-cell exercise; 2) denying him adequate medical care; and 3) confining him to overcrowded cells. Bolick separately alleges that

7

Director Stirling should be held liable in his individual capacity for the Officials' Eighth Amendment violations under a theory of supervisory liability.[1] After discovery, the defendants moved for summary judgment.

The district court granted the defendants' motion for summary judgment and dismissed all of Bolick's claims. The district court first concluded that Bolick failed to establish genuine disputes of material fact under any theory of inhumane conditions of confinement. On the basis of that conclusion, the district court found the Officials entitled to qualified immunity. The district court also concluded that Bolick failed to submit evidence upon which a reasonable jury could find Director Stirling liable under a theory of supervisor liability. Bolick appeals only from the district court's rulings on his claims concerning deprivation of out-of-cell exercise. Thus, we do not consider his other claims. We appointed counsel and asked the parties to submit formal briefing.[2]

---

[1] Bolick also brought a claim for wrongful incarceration. The district court summarily dismissed this claim without prejudice and later denied a motion for reconsideration of the summary dismissal. Bolick appeals the denial of reconsideration. Having reviewed the record and relevant briefing, we affirm the district court's denial. Bolick's criminal conviction and sentence have not been invalidated, as required to establish a claim of wrongful incarceration. *See Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994).

[2] The Appellate Litigation Clinic at the Duke University School of Law represented Bolick as *pro bono* counsel. Duke Law student Zoe Terner ably argued on behalf of Bolick as an eligible law student pursuant to Local Appellate Rule 46(a). The panel commends Ms. Terner for her excellent oral advocacy. The district court may also wish to consider appointing *pro bono* counsel to represent Bolick on remand.

8

III. Analysis

We review a district court's grant of summary judgment *de novo*. *Alexander v. Connor*, 105 F.4th 174, 177–78 (4th Cir. 2024). In doing so, we view the facts in the light most favorable to the non-moving party—here, Bolick—and draw all reasonable inferences in his favor. *Id.* at 179. Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Bolick urges us to conclude that there are sufficient material facts in dispute such that his claims that the Officials and Director Stirling violated his Eighth Amendment right to humane conditions of confinement by depriving him of out-of-cell exercise should be sent to a jury. Because Bolick asserts different theories of liability for each, we first address his claim against the Officials, we then address the question of whether the Officials are entitled to qualified immunity on that claim, and we close by considering whether Director Stirling can be held liable for the Officials' alleged constitutional violations. We find that Bolick's claim against the Officials survives summary judgment but his claim against Director Stirling does not.

9

A.  Eighth Amendment

The Eighth Amendment's prohibition of cruel and unusual punishments imposes an affirmative obligation on prison officials to provide incarcerated individuals with "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This obligation, which applies to state prison officials through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660 (1962), includes ensuring that incarcerated individuals receive "the minimal civilized measure of life's necessities[.]" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). One such long-recognized necessity is the human need for exercise. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Depriving incarcerated individuals "of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishment." *Mitchell v. Rice*, 954 F.2d 187, 193 (4th Cir. 1992), *cert. denied*, 506 U.S. 905. The opportunity to engage in in-cell exercise will typically not suffice. *See id.* at 191. Rather, absent exceptional circumstances, prison officials must provide incarcerated individuals with "some regular out-of-cell exercise." *Id.*

To prevail on an Eighth Amendment claim of inhumane conditions of confinement based on the deprivation of out-of-cell exercise, an incarcerated individual must satisfy two requirements. First, he must establish that the deprivation was "*objectively* sufficiently serious[.]" *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (citation omitted). Second, he must establish that the prison official acted with a sufficiently culpable state of mind, at a minimum that the prison official acted with deliberate indifference to a

10

substantial risk of serious harm. *Id.* We address each requirement in turn and conclude that Bolick produced sufficient evidence to create a triable issue of fact as to both.

i.    *Sufficiently Serious Deprivation*

We first consider whether the deprivation Bolick suffered was objectively sufficiently serious. To withstand summary judgment, Bolick must present evidence on the basis of which a reasonable fact finder could conclude that he suffered a "serious or significant physical or emotional" harm or was exposed to a "substantial risk thereof" resulting from the deprivation of out-of-cell exercise. *De'lonta*, 708 F.3d at 525 (citation omitted); *see also Helling v. McKinney*, 509 U.S. 25 (1993). Relevant to this inquiry, this court has considered the totality of the circumstances, including the length of the deprivation. *Mitchell*, 954 F.2d at 191. Prison officials may invoke exceptional penological considerations to argue that they had no choice but to restrict access to out-of-cell exercise. *Id.* at 192. Neither cost nor inconvenience may justify the deprivation, however. *Id.* Exercise restrictions, therefore, must be limited to "'unusual circumstances,' or circumstances where 'disciplinary needs ma[ke] [out-of-cell exercise] *impossible*." *Id.* (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)).

Applying this test, we conclude that Bolick met his burden. Bolick was deprived of the ability to exercise for two extended periods of time, each lasting about five months. He attests that this deprivation caused his muscles to atrophy and led to fatigue, chest pains,

11

joint stiffness, and aches in his back, hips, legs, and feet.[3] While incarcerated at Kirkland, Bolick was unable to rehabilitate his preexisting injuries which led to regression of prior progress in rehabilitative therapy. Bolick produced evidence to support his allegation that the inability to exercise for extended periods of time caused him increased anxiety, depression, and suicidal ideation. The Officials point out that a prison doctor who examined Bolick did not note any significant health problems. Such factual disputes do not suggest that summary judgment is appropriate. Rather, they support a conclusion that genuine issues of material fact remain.

The Officials argue that five to six months without out-of-cell exercise is too short a period to support a claim of inhumane conditions of confinement. We disagree. *See, e.g.*, *Rivera v. Mathena*, 795 F. App'x 169, 175 (4th Cir. 2019) (per curiam) (vacating grant of summary judgment against an incarcerated individual who suffered injuries resulting from two-month deprivation of out-of-cell exercise); *Brown v. Lamanna*, 304 F. App'x 206, 208–09 (4th Cir. 2008) (per curiam) (vacating grant of summary judgment against an incarcerated individual with disabilities who was not able to shower or exercise for two months). Although the length of deprivation is one consideration, time alone is not dispositive. *See Mitchell*, 954 F.2d at 191 (describing totality of the circumstances test). A deprivation of the same length might pose a substantial risk of serious harm to an incarcerated individual—like Bolick—who is unable to exercise inside his cell due to his

---

[3] Contrary to the Officials' assertion, Bolick's declarations describing his physical and mental condition, even if self-serving, may suffice to create genuine disputes of material facts. *See Jones v. Solomon*, 90 F.4th 198, 206–07 (4th Cir. 2024).

12

physical condition and the small size of the cell, but pose no such risk to another individual who, for example, is able-bodied and resides in a large cell.

The Officials also contend that safety concerns justified precluding all men undergoing reception and evaluation at Kirkland from leaving their cells to engage in out-of-cell exercise. They argue that the circumstances at Kirkland are exceptional, necessitating this blanket policy. Generalized safety concerns cannot, without more, justify a complete deprivation of out-of-cell exercise that causes serious or significant physical or emotional harm or a substantial risk thereof. Our caselaw makes clear that penological justifications must be particularized to the specific incarcerated individual. *See Mitchell*, 954 F.2d at 192 (describing the incarcerated individual's "unmanageable, violent nature" as a penological consideration that potentially justifies the deprivation of out-of-cell exercise); *see also Anderson v. Romero*, 72 F.3d 518, 527 (7th Cir. 1995) (explaining that depriving an incarcerated individual of out-of-cell exercise violates the Eighth Amendment unless the incarcerated individual "pose[s] an acute security risk if allowed out of his cell for even a short time").

The Officials introduced no evidence to suggest that Bolick posed an individualized safety risk. Nor can they. Nothing in Bolick's personal background, his behavior in prison, or the circumstances of his conviction can be understood to justify not allowing him to leave his cell to exercise. The Officials similarly provided no explanation for why other,

13

less drastic alternatives to total deprivation of out-of-cell exercise would not address their penological concerns.[4]

Finally, the Officials argue that the in-cell exercise pamphlet provided Bolick with meaningful alternatives to out-of-cell exercise. To be sure, in-cell exercise may substitute for out-of-cell exercise where out-of-cell exercise is not feasible. *See Mitchell*, 954 F.2d at 192–93. It may do so, however, only when the incarcerated individual is in fact able to exercise inside of his cell. *See id.* at 193. Bolick provided evidence that he was unable to do so, pointing to his physical condition and the size of the prison cells in which he was housed. Determining the feasibility and adequacy of proposed alternatives to out-of-cell exercise involves questions of fact susceptible to material disputes that may not be resolved at summary judgment.

Having considered the totality of the circumstances, we find that Bolick met his burden to show that genuine disputes of material fact remain as to whether the deprivation of out-of-cell exercise was sufficiently serious.

## ii.    *Deliberate Indifference*

Having concluded that genuine disputes of fact exist on the first requirement, we now turn to the question of the Officials' state of mind. To survive summary judgment, an incarcerated individual must present direct or circumstantial evidence that the prison

---

[4] In granting summary judgment, the district court relied heavily on the Officials' argument that the exigencies of the COVID-19 pandemic required them to confine men undergoing reception and evaluation at Kirkland to their cells. The Officials abandoned this justification on appeal, however. For good reason. Significantly, the Kirkland policy that prohibits out-of-cell exercise predates the COVID-19 pandemic.

14

official both knew of and consciously disregarded the substantial risk of serious harm from the deprivation of out-of-cell exercise. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Circumstantial evidence can establish actual knowledge if, for example, the risk "was obvious," or the prison official "expressly noted" or "had been exposed to information" about the risk. *Id.* (quoting *Farmer*, 511 U.S. at 842). If the prison official's response "was so patently inadequate," then a jury may reasonably infer that the official knew that her response was not appropriate. *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (citation omitted).

Viewing the evidence in the light most favorable to Bolick, we conclude that genuine issues of material fact remain concerning whether the Officials knew that Bolick's physical ailments in combination with the crowded conditions would make it impossible for him to exercise inside of his cell. *See Makdessi*, 789 F.3d at 133–34. The Officials knew that Bolick was not permitted to leave his cell to exercise. Lieutenants Sumter, Wright, and Robb oversaw the Kirkland dormitories where Bolick was housed and enforced the SCDC policies. Bolick filed numerous requests and grievances complaining that the inability to engage in exercise was causing his physical and mental health to deteriorate. In response, the Officials simply directed Bolick to the in-cell exercise pamphlet despite his assertions that he was unable to perform the exercises contained therein. A reasonable jury could conclude that, in so doing, the Officials consciously disregarded a significant risk of serious harm to Bolick.

The Officials concede that they were aware of Bolick's condition and his complaints but maintain that they were simply carrying out the official SCDC policy that precludes

15

out-of-cell exercise for all individuals undergoing reception and evaluation. To the contrary, an Eighth Amendment violation may lie even where a prison official acts pursuant to official policy. *See, e.g.*, *Gordon v. Schilling*, 937 F.3d 348, 358–59 (4th Cir. 2019).

Thus, Bolick met his burden to show that genuine disputes of material fact remain as to whether the Officials acted with deliberate indifference by depriving him of the opportunity to engage in out-of-cell exercise.

## B. Qualified Immunity

The Officials contend that, even if a reasonable jury could find they violated Bolick's Eighth Amendment right to humane conditions of confinement, they are entitled to qualified immunity. We disagree.

We apply a two-step inquiry to determine whether summary judgment on the basis of qualified immunity is warranted. *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024). First, we consider whether, in the light most favorable to the injured party, the government official's conduct violated a constitutional right. *Id.* We then ask whether the right at issue in the first step was clearly established at the time of the contested action. *Id.* The official invoking qualified immunity bears the burden to show that the right was not clearly established. *Henry v. Purnell*, 501 F.3d 374, 378 & n.4 (4th Cir. 2007). Answering either question in the negative warrants granting qualified immunity. *Nazario*, 103 F.4th at 230.

16

We have already determined that factual disputes preclude summary judgment on Bolick's claim of inhumane conditions of confinement. These disputes necessarily also preclude summary judgment on the first step of the qualified immunity inquiry. *See Mitchell*, 954 F.2d at 193 (explaining that a factual review of the feasibility of alternatives to out-of-cell exercise must precede a grant of qualified immunity). Accordingly, we proceed to the second step: whether the right was clearly established.

A constitutional right is clearly established when its contours are sufficiently clear for a reasonable official to understand that her conduct violates that right. *Nazario*, 103 F.4th at 230. The official must have "fair warning, with sufficient specificity" that her conduct is constitutionally suspect. *Quinn v. Zerkle*, 111 F.4th 281, 294 (4th Cir. 2024) (quoting *Aleman v. City of Charlotte*, 80 F.4th 264, 295 (4th Cir. 2023)). A right that is "manifestly included within more general applications of the core constitutional principle invoked" is also clearly established. *Nazario*, 103 F.4th at 231 (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). We look to the precedent of the United States Supreme Court and our own court in conducting this inquiry. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017).

The right Bolick asserts is that of incarcerated individuals to engage in regular exercise, including some out-of-cell exercise, absent particularized penological justifications or other exceptional circumstances. A reasonable prison official would have been on notice that the Officials' conduct here would have violated this right, which had been clearly established by the time Bolick was incarcerated at Kirkland. *See Aleman*, 80 F.4th at 295.

17

For over half a century, this court has recognized that depriving an incarcerated individual of adequate exercise can violate the Eighth Amendment. *See Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 865 (4th Cir. 1975) (en banc); *see also Mitchell*, 954 F.2d at 191–92 (holding that absent unusual circumstances, the Eighth Amendment generally requires prison officials to provide incarcerated individuals with some regular exercise opportunities, including some regular out-of-cell exercise). The Supreme Court similarly recognized this right in *Wilson v. Seiter*. 501 U.S. at 304–05.

The Officials contend that the asserted right is that of incarcerated individuals to "out-of-cell exercise, while temporarily housed at an in-take institution assessing the dangerousness, vulnerability, and compatibility of 8000 inmates annually, all the while being let out for phone calls and showers, receiving proper medical attention, and being provided with an in-cell exercise program." Resp. Br. 19. The complexity of this formulation evinces its excessive granularity. The precise fact pattern at issue need not have been specifically adjudicated. *See Nazario*, 103 F.4th at 230–31. If qualified immunity was applied in every case except where the "very action in question [had] previously been held unlawful," *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)), civil liability for government actions would rarely lie. This is not what our precedent requires, particularly in the Eighth Amendment context. *See Pfaller v. Amonette*, 55 F.4th 436, 445–46, 453 (4th Cir. 2022).

Because genuine issues of material fact remain as to Bolick's claim that the Officials violated his Eighth Amendment right to out-of-cell exercise, and because that right was

18

clearly established at the time of Bolick's incarceration, the Officials are not entitled to summary judgment on the question of qualified immunity.

## C.  Supervisory Liability

We turn now to the question of whether Director Stirling can be held liable for the Officials' alleged violations of his constitutional rights under a theory of supervisory liability. Although Bolick never personally interacted with Director Stirling, Bolick argues that Director Stirling should nevertheless be held liable.

A supervisor may be held personally liable under Section 1983 for a constitutional violation committed by a subordinate state or local government official where the supervisor's "indifference or tacit authorization" was "a causative factor" in enabling the violation. *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). This is not a theory of vicarious liability for the deeds or misdeeds of a subordinate. Rather, the supervisor is found "liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). To determine whether such liability may attach, we must consider whether the supervisor's own "deliberate indifference permitted the constitutional abuses to continue unchecked." *Slakan*, 737 F.2d at 373. A supervisor who promulgates, directs, or oversees policies and practices that foreseeably inflict widespread constitutional injury cannot escape liability by hiding behind subordinates responsible for implementing her commands. *Id.* at 376.

A claim of supervisory liability requires the plaintiff to prove that 1) the supervisor had actual or constructive knowledge that her subordinate's conduct "posed 'a pervasive

19

and unreasonable risk' of constitutional injury" to persons in the plaintiff's position; 2) the supervisor exhibited "deliberate indifference to or tacit authorization" of the constitutionally injurious conduct; and 3) some "affirmative causal link" existed between the supervisor's inaction and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). To survive Director Stirling's motion for summary judgment, Bolick must provide sufficient evidence to create a genuine dispute of material fact as to all three elements.

Our analysis begins and ends with the first element. On the record before us, there is insufficient evidence from which a reasonable jury could find that Director Stirling possessed actual or constructive knowledge that the unreasonable risk of constitutional injury posed by the SCDC policy prohibiting out-of-cell exercise at Kirkland was widespread. *See Shaw*, 13 F.3d at 799 (citation omitted). We therefore affirm the district court's grant of summary judgment and dismissal of Bolick's claims against Director Stirling.

## IV.  Conclusion

For the reasons set forth above, we vacate the district court's order granting summary judgment to the Officials, affirm the grant of summary judgment to Director Stirling, and remand for further proceedings consistent with this opinion.

*VACATED IN PART, AFFIRMED IN PART*

*AND REMANDED*

20